F. Joseph **MERLINO**, Deborah Thomas, Justine Vigilante, Charles Brown, Lawrence Arata, III, Petitioners,

v.

**DELAWARE COUNTY**, Mary Ann Arty, Joseph Kelly, Paul Mattus, John Taylor, Ward Williams, Commonwealth of Pennsylvania, Department of Environmental Resources, Respondents.

Commonwealth Court of Pennsylvania.

Argued Feb. 10, 1998.

Decided May 15, 1998.

Accordingly, we deny Employer's request for counsel fees and costs made pursuant to Pa. Rule of Appellate Procedure 2744.

Paul Boni, Philadelphia, for petitioners.

Michael P. Dignazio, Media, and W. Stanley Sneath, Conshohocken, for respondents.

Before SMITH and FLAHERTY, JJ., and MIRARCHI, Jr., Senior Judge.

MIRARCHI, Jr., Senior Judge.

In 1991, F. Joseph Merlino, Deborah Thomas, Justine Vigilante, Charles Brown, and Lawrence Arata, III (collectively, Petitioners) filed an equity action against Delaware County (County) and individual officials of the County with the Court of Common Pleas of Delaware County. The County joined the Pennsylvania Department of Environmental Resources (the Department) as an additional defendant.[1] The matter was thereafter transferred to this Court's original jurisdiction. Presently before the Court is Petitioners' motion for summary judgment. For the following reasons, we grant Petitioners' motion.

Petitioners' complaint against the County alleges that the County is in violation of the Storm Water Management Act (Act), Act of October 4, 1978, P.L. 864, *as amended*, 32 P.S. §§ 680.1–680.17, for failure to prepare and adopt a storm water management plan for the Darby Creek watershed and other watersheds existing in the County. Petitioners further allege that they have been directly injured because of the County's failure to adopt such plans. Section 5 of the Act, 32 P.S. § 680.5, provides that within two years following the promulgation by the Department of certain guidelines contemplated by the Act, each county of the Commonwealth shall prepare and adopt storm water management plans for each watershed existing in the county. A watershed is defined in Section 4 of the Act, 32 P.S. § 680.4, as a "region or area drained by a river or other body of water, whether natural or artificial."

The Act's imposition upon the counties to prepare and adopt such plans was made pursuant to specific findings and policy goals of the General Assembly. Section 2 of the Act, 32 P.S. § 680.2, articulates the General Assembly's findings that:

(1) Inadequate management of accelerated runoff of storm water resulting from development throughout a watershed increases flood flows and velocities, contributes to erosion and sedimentation, overtaxes the carrying capacity of streams and storm sewers, greatly increases the cost of public facilities to carry and control storm water, undermines flood plain management and flood control efforts in downstream communities, reduces ground-water recharge, and threatens public health and safety.

(2) A comprehensive program of storm water management, including reasonable regulation of development and activities causing accelerated runoff, is fundamental to the public health, safety and welfare and the protection of the people of the Commonwealth, their resources and the environment.

In accordance with these findings, the General Assembly further articulated, in Section 3 of the Act, 32 P.S. § 680.3, that the purpose and policy of the Act is to:

(1) Encourage planning and management of storm water runoff in each watershed which is consistent with sound water and land use practices.

(2) Authorize a comprehensive program of storm water management designated [sic] to preserve and restore the flood carrying capacity of Commonwealth streams; to preserve to the maximum extent practicable natural storm water runoff regimes and natural course, current and cross-section of water of the Commonwealth; and to protect and conserve ground waters and ground-water recharge areas.

(3) Encourage local administration and management of storm water consistent with the Commonwealth's duty as trustee of natural resources and the people's constitutional right to the preservation of natural, economic, scenic, aesthetic, recreational and historic values of the environment.

---

1. The Department of Environmental Resources was renamed the Department of Environmental Protection, effective July 1, 1995, by Section 501 of the Act of June 28, 1995, P.L. 89, 71 P.S. § 1340.501.

Among the numerous provisions of the Act is the imposition upon the Department to publish guidelines for storm water management, triggering the Section 5 time limit for counties to prepare and adopt storm water management plans. *See* Section 14(3) of the Act, 32 P.S. § 680.14(3). The Department promulgated its Stormwater Management Guidelines (Guidelines) pursuant to the Act in 1985, and the Guidelines were approved by the General Assembly that year. The Guidelines provide that each storm water management plan is to be implemented in two phases. The first phase consists of a Scope of Study that is to be submitted to the Department for its approval. The Scope of Study consists of an overview of the actual watershed storm water management plan and the level of effort required by the county to devise and implement the plan, including time schedules for achieving the major tasks of the plan, the estimated cost of each task, personnel requirements, and a narrative of how the plan shall achieve the purposes of the Act. *See* Sections 3.1 and 3.2 of the Guidelines.

The second phase contemplated by the Guidelines is the plan itself. The Act lists thirteen minimal requirements or tasks of each plan, including surveys of runoff and flooding characteristics, assessments of the impact of existing storm water collection systems, assessments of the impact of existing and proposed land development in the watershed, and proposed solutions and priorities. Section 5 of the Act, 32 P.S. § 680.5. The Guidelines discuss each of these requirements in depth.

The Act clearly contemplates that the public and local municipalities are to be involved in the process of developing and reviewing plans. *See* Sections 6 and 8 of the Act, 32 P.S. §§ 680.6 and 680.8. *See also* Guidelines, Section 2.3. The Department shall review and approve or disapprove all plans.[2] Section 9 of the Act, 32 P.S. § 680.9. The Department is also authorized to administer grants to municipalities and counties to assist with or reimburse the costs of preparing and implementing storm water management plans, to the extent that funds are appropriated by the General Assembly for these purposes. Section 17 of the Act, 32 P.S. § 680.17. The Act also contains several provisions for remedies with respect to violations of the Act or damages arising from the Act. These provisions shall be discussed more particularly in connection with the arguments of the parties for and against summary judgment.

Six watersheds exist in the County. At the time of argument, the County had adopted a storm water management plan for only one watershed (the Ridley Creek watershed) and had begun work on a plan for a second watershed (the Chester Creek watershed). Petitioners reside in the Darby Creek watershed of the County. They contend that the County's failure to adopt and implement a plan for the Darby Creek watershed, as well as for the other watersheds in the County that are without plans, is a violation of the Act. Two of the Petitioners, Merlino and Vigilante, have alleged that they have been directly harmed by the County's failure to adopt and implement a plan for the Darby Creek watershed. Attached to the petition for summary judgment is Merlino's affidavit stating various harms resulting from the County's violation of the Act. These harms include flooding on the streets following rain storms, causing hazardous driving conditions; a diminution in the property value of Merlino's house because of the street flooding; a reduction of the enjoyment of the Darby Creek and adjoining parks because of the flooding of the creek and subsequent erosion and sedimentation problems along the banks of the creek; and an inflation of municipal sewer fees because of the high volume of storm water that is processed in Merlino's municipality. Attached to Petitioners' reply memorandum of law is Vigilante's affidavit that avers that she is harmed as a result of the County's violation of the Act because of flooding on her property from storm water. Photographs of a flooded property, alleged to be Vigilante's, are appended to the affidavit. Petitioners have brought suit pursuant to Section 15(b) of the Act, 32 P.S. § 680.15,

---

2. The Act provides for deemed approval should the Department fail to act upon a plan within ninety days of its submission, however. Section 9(c) of the Act, 32 P.S. § 680.9(c).

which permits suits "to restrain, prevent or abate violations of" the Act by, among others, "any aggrieved person."

Contending that no issue of material fact exists and that their right to relief is clear under the law, Petitioners have requested this Court to issue summary judgment in their favor and against the County. More specifically, Petitioners request that this Court direct that the County adopt and submit to the Department for review and approval Phase I Scope of Studies for each of the watersheds in the County (except for the Ridley and Chester Creek watersheds, for which the County has already acted pursuant to the Act). Petitioners make this request with the knowledge that the actual adoption of the plans themselves is a considerable undertaking, but also with the understanding that the Phase I Scopes of Study are to contain time frames for the completion of the Phase II plans pursuant to Section 3.2 of the Guidelines. Memorandum of Law in Support of Petitioners' Motion for Summary Judgment, pp. 15–16.

Summary judgment is appropriate only when, following an examination of the record, no genuine issue of material fact exists and the movant is clearly entitled to judgment as a matter of law. *Rothermel v. Department of Transportation*, 672 A.2d 837 (Pa.Cmwlth.1996). Moreover, the reviewing court must examine the record in the light most favorable to the nonmoving party, accepting as true all well-pleaded facts and all reasonable inferences to be drawn therefrom. *Id.* For purposes of reviewing a summary judgment motion, the record shall consist of the pleadings, depositions, answers to interrogatories, admissions, affidavits, and certain expert reports. Rule 1035.1 of the Pennsylvania Rules of Civil Procedure, Pa. R.C.P. No. 1035.1.

The County does not deny that the Guidelines were implemented by the Department in 1985. Nor does it deny that it has, to date, failed to adopt and implement storm water management plans for the Darby Creek and other watersheds in the County except for the Ridley Creek watershed. The

County argues, however, that Petitioners are not entitled to summary judgment in this matter because they lack standing to seek mandamus relief under the Act.[3] This argument has several components. First, the County argues that Petitioners are not aggrieved persons in that they are not specifically harmed and that their interests are allegedly no different than those of other citizens of the County. The County further argues that the Act is designed to address steps to be taken in undeveloped or partially developed sections of the County, not the fully developed areas where Petitioners reside and allege damage from flooding. Second, the County argues that the Act permits only the Department to seek mandamus relief, and it has chosen not to do so. In fact, the County argues that it has reached an agreement with the Department to work upon only one watershed plan at a time in accordance with a priority list that places the Darby Creek watershed fourth among the County's watersheds that do not have a plan. The County further argues that the relief Petitioners request is not amenable to judicial resolution as the County must reach agreement with other counties before any plan can be effective as the watersheds extend beyond the County's borders to originate in other counties. We find that these arguments are either unpersuasive under the law or unsupported by the record.

Section 15 of the Act permits private individuals to bring suit to enforce provisions of the Act. That section provides in pertinent part:

(a) Any activity conducted in violation of the provisions of this act or of any watershed storm water plan ... is hereby declared a public nuisance.

(b) Suits to restrain, prevent or abate violation of this act or of any watershed storm water plan ... may be instituted in equity or at law by the [D]epartment, any affected county or municipality, or *any aggrieved person.* ... The expense of such proceedings shall be recoverable from the violator in such manner as may now or hereafter be provided by law....

3. The County has not, however, filed a cross-motion for summary judgment.

32 P.S. § 680.15 (emphasis added). Although Section 10 of the Act, 32 P.S. § 680.10, provides that the Department "may" institute a mandamus action to compel a county to adopt and submit plans, it is also clear that an aggrieved private citizen may bring an action to address violations of the Act under Section 15. It is instructive to note that Section 15 provides that civil remedies are available not only for violations of any watershed plan, or of any regulation or ordinance adopted with respect to the plan, but also of any violation of the Act itself. The Act principally addresses the duties of the counties of the Commonwealth to adopt, submit, and implement storm water management plans. The County's argument that Section 10 provides the exclusive remedy against a county that fails to abide by the mandates of the Act is thus not evident by the plain language of the remainder of the Act. When construing a section of a statute, the reviewing court should not read that section in isolation, but should read it with reference to, and in the light of, the remaining sections of the statute. *Consulting Engineers Council of Pennsylvania v. State Architects Licensure Board,* 522 Pa. 204, 560 A.2d 1375 (1989).

The County also argues that Petitioners are not aggrieved persons as contemplated by Section 15 of the Act. First, the County argues that Petitioners may not enforce a public duty without specifying a right or interest different from that of the general public or an injury special and peculiar to themselves. Second, the County argues that Petitioners have failed to demonstrate any form of harm different from other citizens of the County. Third, the County argues that whatever harm is averred by Petitioners, it will not be alleviated by the adoption of a storm water management plan for the Darby Creek watershed.

▆ In order to have standing, a party must demonstrate that he or she has (1) a substantial interest in the subject matter of the litigation: (2) a direct interest in the litigation: and (3) an interest that is immediate and not a remote consequence of the relief requested. *Boady v. Philadelphia Municipal Authority,* 699 A.2d 1358 (Pa.

Cmwlth.1997). A "substantial interest" is an interest "beyond the abstract interest of all citizens in procuring obedience to the law." *Lore v. Sobolevitch,* 675 A.2d 805, 808 (Pa. Cmwlth.1996). A party's interest does not have to be a financial one "because it is clear that some interests will suffice to confer standing even though they are neither pecuniary nor readily translatable into pecuniary terms." *Id.*

▆ Petitioners, Merlino and Vigilante have demonstrated that they are aggrieved and have standing to bring this action. The affidavits of Merlino and Vigilante demonstrate that the harm they have suffered extends beyond that of the public interest in procuring obedience to the law. Merlino and Vigilante have averred direct and immediate harm as a result of inadequate storm water management in the form of flooded and dangerous streets, flooded property, reduced property values, inflated sewer fees, and damage to the aesthetic nature of the Darby Creek waterway and its adjoining parks. Thus, the case before us is far different from the cases to which the County would have us draw analogies.

The County argues that this case is controlled by cases such as *Sierra Club v. Hartman,* 529 Pa. 454, 605 A.2d 309 (1992); and *Douros v. Township of Newtown,* 108 Pa. Cmwlth. 606, 530 A.2d 1002 (1987). These cases, however, reiterate the principal that a private litigant may "maintain a mandamus action to enforce a public duty when the plaintiff has an individual and beneficial interest in the litigation independent of that which is held by the public at large." *Douros,* 530 A.2d at 1003. In *Douros,* this Court held that private individuals lacked standing to compel a township to record a deed for a strip of land transferred to the township that adjoined a highway where the record failed to demonstrate that the plaintiffs possessed an interest or enforceable right distinguishable from that of other citizens of the township. In *Sierra Club,* the Supreme Court determined that the plaintiffs lacked standing to compel the legislature to print in the *Pennsylvania Bulletin* a proposed air pollution regulation on the grounds that plaintiffs would otherwise be deprived of their state

constitutional right to clean air and because one plaintiff suffered from respiratory problems caused by smog. The Court noted that the alleged deprivation of constitutional rights constituted a general harm that applied to all citizens and that no evidence was introduced that would show that the printing of the regulation would improve the respiratory problems of the affected plaintiff. Clearly, the interests of Petitioners in this case are more specific and direct than those of the plaintiffs in *Douros* and *Sierra Club,* and the relief from storm water damage sought by Petitioners would not be a remote consequence of the duty Petitioners would have the County fulfill. As the Supreme Court noted in the seminal case of *William Penn Parking Garage, Inc. v. City of Pittsburgh,* 464 Pa. 168, 346 A.2d 269 (1975), plaintiffs seeking to enforce a public duty are not precluded from doing so simply because many others have suffered similar injuries from the government's failure to satisfy that duty.

The County further argues, however, that the harm alleged by Petitioners has not been caused by the County's failure to adopt and implement a storm water management plan for the Darby Creek watershed and that such a plan will not serve to alleviate any alleged harm. This argument is based upon the County's unfounded contention that storm water management plans are not intended to address the storm water problems of existing development. Petitioners reside in an area of the County that is heavily developed. The Act and the Guidelines, however, refute the notion that the legislature intended that the implementation of storm water management plans was only for storm water problems in developing as opposed to fully developed areas.

The General Assembly specifically found that inadequate management "of storm water resulting from development *throughout* a watershed increases flood flows and velocities." 32 P.S. § 680.2(1). Further, the General Assembly determined that a *"comprehensive* program of storm water management" is *"fundamental"* to the public health, safety, and welfare. 32 P.S. § 680.2(2). The General Assembly also contemplated that inade-

quate management of development undermines flood control efforts in downstream communities. 32 P.S. § 680.2(1). Thus, even if we were to accept the County's argument that storm water management plans were principally designed to address issues in developing areas of the watershed, the General Assembly clearly found that such plans have an effect on the flood conditions in the downstream, fully-developed communities. *See also* Guidelines, Section 1.1.4 (storm water management plans are also designed to prevent an aggravation of existing problems in developed downstream communities as a result of improper planning in developing upstream communities).

The General Assembly indicated further that the Act is intended to encourage *"local* administration and management of storm water." 32 P.S. § 680.3(3). Each municipality of the watershed is to be involved in the development of storm water management plans, not just the municipalities of developing communities. 32 P.S. § 680.6. Moreover, the requirements of the plans themselves fully indicate that the plans are intended to address storm water management throughout the watershed, including existing problems with flooding. Each plan is to include:

(1) a survey of existing runoff characteristics in small as well as large storms...

(2) a survey of existing significant obstructions and their capacities;

....

(4) an analysis of *present* and projected development in flood hazard areas...

(5) a survey of *existing* drainage problems and *proposed solutions;*

(6) a review of *existing* and proposed storm water collection systems and *their impacts;*

(7) an assessment of alternative runoff control techniques and their efficiency in the ... watershed;

....

(9) a designation of those areas to be served by storm water collection and control facilities [and matters appurtenant thereto];

....

(11) criteria and standards for the control of storm water runoff from *existing* and new development which are necessary to minimize the dangers to property and life and carry out the purposes of [the Act]. . . .

32 P.S. § 680.5(b) (emphasis added). Further, the Guidelines clearly provide that storm water management plans are to identify and provide proposed solutions for existing storm water problems in developed communities. Guidelines, Section 1.1.5.

■ Thus, the provisions of the Act absolutely refute the County's contention that the Act does not contemplate that developed communities are to be aided by storm water management plans or that storm water management, pursuant to the Act, is merely a condition to be limited to and contained within the developing parts of a watershed.

■ The County also argues that it is impossible to order the relief requested by Petitioners because any storm water management plan of the County must be made in coordination with the efforts of the surrounding counties which contain the headwaters of the County's watersheds. The County argues, in effect, that it has no control over what other counties will or will not do. The Act anticipates this possibility, however. Section 7 of the Act provides that "[w]here a watershed includes land in more than one county, the department may require the affected counties to prepare, adopt and submit a joint plan for the entire watershed." 32 P.S. § 680.7. The Act does not always require a joint plan, however. At this point, where the County has admittedly failed to take any steps with regard to adopting a plan for the Darby Creek watershed, it is premature for the County to speak of the difficulties it will encounter in formulating a plan because the Darby Creek originates in another county. A map of area watersheds attached to Petitioners' motion for summary judgment indicates that the Darby Creek watershed advances only briefly beyond the borders of the County into neighboring Ches-

ter County; the vast bulk of the watershed exists within the County. Petitioners have alleged that this map was produced by the County in response to Petitioners' requests for production of documents. The County has not denied this or challenged the accuracy of the map. Thus, there exists nothing in the record that would indicate that the County is incapable of complying with its duty under the Act for the sole reason that Darby Creek extends for a brief distance into another county. Should the County encounter a problem because of this circumstance, the Act provides for relief, as shall be discussed shortly.

We therefore conclude that Petitioners Merlino and Vigilante have demonstrated that they have standing to bring this action against the County and that the Act was designed, in part, to address the storm water problems suffered by Petitioners. Thus, enforcement of the Act would reasonably be related to the relief Petitioners ultimately seek—relief from the injurious effects of storm water flooding. We must now address whether summary judgment is appropriate.

■ The Act is very specific that each county "shall," within two years of the promulgation of the Guidelines by the Department, prepare and adopt a storm water management plan for each watershed located in the county. 32 P.S. § 680.5. There is no dispute that the Guidelines were promulgated by the Department and approved by the General Assembly in 1985. There is also no dispute that the County has failed to adopt a storm water management plan for the Darby Creek watershed by 1987 and has not adopted such a plan to date. There is no dispute that the County has not even instituted the Phase I Scope of Study for a Darby Creek watershed storm water management plan. Further, the County has offered no evidence to rebut the affidavits of Merlino and Vigilante detailing the harm suffered from storm water flooding in their communities in the watershed.[4] The harm alleged pertains to safety, monetary loss, and aesth-

---

4. Once a summary judgment motion is made and is supported with evidence, the adverse party may not simply rest upon its allegations or denials in the pleadings. The adverse party must set forth facts in dispute by affidavit or otherwise. *Kniaz v. Benton Borough,* 164 Pa.Cmwlth. 109, 642 A.2d 551 (1994).

etic detriment. The Act clearly contemplates the abatement or management of storm water flooding as well as the prevention of an aggravation of existing flooding conditions by management of upstream development.

The County argues that it has reached an agreement with the Department that exempts the County from the strict requirements of Section 5 of the Act. Section 5(a) provides that the Department may, "for good cause shown, grant an extension of time to any county for the preparation and adoption of a watershed storm water management plan." 32 P.S. § 680.5(a). In support of the County's allegation, it has attached copies of two letters from the County Planning Department to the Chief of the Department's Stormwater Management Division dated 1993 and 1994 respectively. These letters purport to evidence an agreement that the County may proceed along a priority list to allow the initiation and completion of one watershed plan at a time. Purportedly, the watersheds having the highest priority are those "undergoing the greatest development pressure." Exhibit A to Affidavit of John E. Pickett, AICP, Director, Delaware County Planning Department, p. 2. The County has not, however, formally applied to the Department for the Section 5(a) extension of time, nor has it appended any correspondence from the Department with regard to any alleged agreement. In fact, the record contains nothing from the Department concerning an actual or implied grant of extension of time from the Section 5 requirements.

The Guidelines provide that a county's request for a good cause extension "shall include the following considerations" for each watershed:

1. The severity of existing drainage problems and potential for watershed development.

2. The relative rural or urban nature of the watershed.

3. The financial burden to the county, including the availability of adequate State or Federal funds to assist in storm water planning.

4. As identified in approved counties' scopes of study and any applicable grant agreements, the time schedule for completion of each watershed plan, the level of effort or detail required in each watershed storm water management plan to adequately meet the intent and provisions of the Act, and other factors which validly reflect the relative priorities of watersheds within each county.

Guidelines, Section 1.2(D).

Here, the County has not even initiated a Scope of Study for the Darby Creek watershed. Therefore, the County has not examined the matters that "shall" be included in a request for a good cause extension under the Act. In fact, the 1993 letter attached to the County's response to the summary judgment motion is couched as a "response" to the Department's "request that the County prepare a 'Proposal to Prepare Phase I Scope of Study' for each of the County's designated watersheds." Exhibit A to Affidavit of John E. Pickett, AICP, Director, Delaware County Planning Department, p. 1. Thus, the letter admits that the Department is seeking Phase I Scopes of Study for all of the watersheds within the County. The County, in the letter, however, does not request a good cause extension under the Act. Instead, it argues that it is more desirable to proceed with one watershed plan at a time in accordance with its proposed priority list, each plan taking a minimum of *four years* to complete. The letter mentions unspecified staffing, financial, and contractual concerns. *Id.*

 Although the 1994 letter attached to Pickett's affidavit purports to acknowledge the Department's approval of the County's priority list, nothing from the Department is attached to the County's response to the Petitioners' motion for summary judgment, even though the County had joined the Department as a party. Therefore, the County has not produced any evidence that its admitted violation of the Act is excused in accordance with the provisions of the Act. The letters supplied by the County simply reflect the fact that the County intends that its violation of the Act will continue into the next century.[5]

5. Nothing in the record indicates why the County

was able to complete only one plan and begin

Petitioners have established their standing to bring this action against the County and have demonstrated harm because of the County's violation of the Act. The County has produced nothing to contradict Petitioners' averments of harm. The County has admitted its continuing violation of the Act and has produced nothing to excuse that violation under the provisions of the Act. This is not an insignificant matter. The Act specifically states the General Assembly's findings that inadequate storm water management is a threat to the health and safety of the public and that comprehensive plans to address storm water management are "fundamental" to the public health, safety, and welfare and the interests of the Commonwealth as a whole. 32 P.S. § 680.2. The General Assembly's serious concern and expression of urgency regarding these "fundamental" matters is stated or implied throughout the Act.

Accordingly, we find that summary judgement is appropriate on the face of the record. We therefore enter judgment for Petitioners and against the County and direct that the County expeditiously begin work upon a Phase I Scope of Study for the Darby Creek watershed, to be completed and submitted for approval to the Department without undue delay.[6]

### ORDER

AND NOW, this 15th day of May, 1998, upon consideration of the motion for summary judgment of Petitioners and the response thereto by Respondent, Delaware County, it is hereby ordered that said motion is Granted, and judgment shall be entered in favor of Petitioners and against Respondent, Delaware County. Respondent, Delaware County, is hereby ordered to expeditiously begin work upon, and complete without undue delay, a Phase I Scope of Study for the Darby Creek watershed as defined by the Storm Water Management Act, Act of October 4, 1978, P.L. 864, *as amended,* and

Guidelines promulgated thereunder, and submit same for approval to the Pennsylvania Department of Environmental Protection.

---

work only on a second since the promulgation of the Guidelines in 1985.

**6.** Although Petitioners have requested that the County begin work on all watersheds within the County limits, Petitioners have established harm, and therefore the right to relief, from only the County's failure to adopt and implement a plan for the Darby Creek watershed.