**James KEVAN, Appellant,**

v.

**Greg MANESIOTIS, Jr.; August Leon, a/k/a Augie Leon; Greg Manesiotis, Sr.; and North Allegheny School District.**

Commonwealth Court of Pennsylvania.

Argued Feb. 9, 1999.

Decided April 14, 1999.

Susan A. Meredith, Pittsburgh, for appellant.

Stephen M. Elek, Pittsburgh, for appellee.

---

**10.** Having so decided, we do not address the remaining issues raised in these appeals.

Before COLINS, President Judge, FRIEDMAN, J., and NARICK, Senior Judge.

NARICK, Senior Judge.

The issue presented is whether the Court of Common Pleas of Allegheny County (trial court) erred in granting summary judgment to the North Allegheny School District (NA) based on governmental immunity or, alternatively, assumption of the risk. Because it did, the order of the trial court is reversed and the case is remanded for trial.

The relevant facts are as follows. James Kevan (Kevan) was a member of the NA baseball team when, on May 16, 1994, he was struck in the face by a baseball hit by assistant baseball coach Greg Manesiotis, Jr. (Manesiotis) during an indoor practice at the school gymnasium. Baseball practice had been moved indoors that day due to inclement weather.

In his deposition,[1] Kevan testified to the following relevant facts:

1. Baseball practice was routinely moved into the gymnasium during inclement weather.

2. Manesiotis was batting balls in the gymnasium to Kevan and approximately 10 other players. Manesiotis was taking full swings at the ball and trying to hit the ball past the players.

3. Manesiotis never before took full swings during indoor practices, instead always taking easier half swings, which resulted in less velocity on the ball.

4. Another assistant coach, August Leon, advised Manesiotis to stop taking full swings at the balls because poor lighting in the gymnasium made it difficult to see the batted balls. Manesiotis ignored Leon's suggestion and continued taking full swings.

5. The first ball that was hit to Kevan was a ground ball. Kevan was able to see the ball when it hit the gymnasium floor and successfully fielded it.

6. The second ball hit to Kevan was a line drive. Due to the poor lighting in the gymnasium, Kevan never saw the ball and the ball struck him in the face.

Kevan filed a lawsuit against several parties seeking recovery for his injuries, including NA for not properly lighting the gymnasium. NA moved for summary judgment on the grounds of governmental immunity. The trial court granted NA's motion on the grounds of governmental immunity as well as the alternative grounds of assumption of the risk by Kevan.

 On appeal,[2] Kevan first argues that the trial court erred in granting summary judgment to NA based on local government immunity because the inadequate lighting in the gymnasium falls within the real property exception to local government immunity. Pursuant to the real property exception to local government immunity, 42 Pa.C.S. § 8542(b)(3),[3] a local government unit may be liable for its employees' or its own negligence related to the care, custody, or control of real property in its possession. *Grieff v. Reisinger*, 548 Pa. 13, 693 A.2d 195 (1997).

1. Upon reviewing a trial court's grant of a motion for summary judgment, we must examine the record in the light most favorable to the non-moving party, accepting as true all well-pleaded facts and all reasonable inferences to be drawn therefrom. *Merlino v. Delaware County*, 711 A.2d 1100 (Pa.Cmwlth.1998). The record includes depositions. *Id.*

2. Our review from a grant of a motion for summary judgment is limited to determining whether there was an error of law or abuse of discretion by the trial court. Pursuant to Pa. R.C.P. No. 1035, summary judgment may be granted when the moving party is entitled to judgment as a matter of law and when there is no genuine issue of material fact. Such judgment should be granted only where the right is clear and free

from doubt. In making this determination the trial court must examine the record in the light most favorable to the non-moving party. *Floyd v. Philadelphia Housing Authority*, 154 Pa. Cmwlth. 303, 623 A.2d 901 (1993).

3. 42 Pa.C.S. § 8542(b)(3) provides as follows:

(b) Acts which may impose liability.—The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:

 * * * * * *

(3) Real property.—The care, custody or control of real property in the possession of the local agency, except that the local agency shall not be liable for damages [with exceptions not relevant here]. . . .

In the present case, the trial court, citing *Mascaro v. Youth Study Center*, 514 Pa. 351, 523 A.2d 1118 (1987), held that Kevan's injuries were caused not by poor lighting in NA's gymnasium but rather by the act of a third party—specifically, the act of assistant coach Manesiotis hitting the baseball that struck Kevan in the face. However, in *Crowell v. City of Philadelphia*, 531 Pa. 400, 613 A.2d 1178 (1992), the Supreme Court held that a government unit is shielded from liability under *Mascaro* only where the government unit's alleged liability is based upon a theory of *vicarious* liability, as opposed to *joint* liability. In other words, if the government unit's alleged liability is based only upon its status along the chain of causation – alleged vicarious liability – then the analysis of *Mascaro* applies and the government unit is shielded from liability. In footnote 10 of *Crowell*, the Court provided the following example of a situation of alleged vicarious liability where the government cannot be held liable under the exceptions to governmental immunity:

> An example of a case where a Mascaro analysis would be proper can be seen in the case of Maloney.... There an injured person sought to sue the city for injuries he received when scaffolding around a city owned property collapsed. The cause of the collapse was the unsafe manner in which the independent contractor constructed the scaffold. The Commonwealth Court refused to permit the suit against the City, reasoning that plaintiff's action was based primarily on the failure of the city to supervise and inspect the acts of another [i.e., vicarious liability], rather than any actions described within the exceptions to the immunity statute. Because the City's purported liability was merely derivative of the contractor's negligence, it was held that the City was [not liable.]

*Crowell*, 531 Pa. at 413 n. 10, 613 A.2d at 1184 n. 10.

Conversely, in *Crowell*, the government unit was not vicariously liable but jointly liable for the plaintiff's injuries, and thus was not shielded by governmental immunity:

> Turning back to the fact of this case, the jury here found unequivocally that the ac-

> tions of the [City] were a substantial contributing cause of the action. Thus, since the basis of the jury's verdict was the active negligence of the [City] misplacing the directional sign, and not merely the City's status along the chain of causation, the verdict against the City was proper, and this Court's decision in Mascaro is not a basis for the City's assertion of immunity.

*Crowell*, 531 Pa. at 413, 613 A.2d at 1184–85.

In *Floyd*, we relied upon *Crowell* in a case factually and legally indistinguishable from the present case. In *Floyd*, the plaintiff sued the Housing Authority after she tripped and fell over some debris that a third party negligently left on some stairs in an unlit Housing Authority stairwell. The Housing Authority, citing *Mascaro*, argued that it could not be held liable for failing to light the stairwell where the plaintiff's harm was caused by the negligent act of the third party in leaving debris in the stairwell. We disagreed and held that, under *Crowell*, the Housing Authority is not shielded by governmental immunity if the absence of lighting in the stairwell substantially contributed to the plaintiff's fall – in other words, if the Housing Authority is found to be jointly liable. We then reversed the trial court's grant of summary judgment and remanded the case for trial because the determination of whether the Housing Authority was jointly liable had to be made by a trier of fact rather than decided as a matter of law. *Accord, Peterson v. Philadelphia Housing Authority*, 154 Pa.Cmwlth. 309, 623 A.2d 904 (1993) (Questions of fact precluded summary judgment for housing authority on issue of whether missing banister and inadequate stairwell lighting were defects in real property rendering housing authority jointly liable for plaintiff's injuries).

As in *Floyd*, where a question of fact existed as to whether inadequate lighting in the Housing Authority's stairwell contributed to the plaintiff's injuries, in the present case a question of fact exists as to whether inadequate lighting in NA's gymnasium contributed to Kevan's injuries. The trial court thus erred in granting summary judgment to NA on the grounds of governmental immunity.

■ Next, Kevan argues that the trial court erred in granting summary judgment to NA on the alternative grounds of assumption of the risk. The trial court held that Kevan assumed the risk because, in his deposition, he testified that he was aware that there was a chance he could be hit by a baseball.

■ Under the doctrine of assumption of the risk, a defendant is relieved of its duty to protect a plaintiff from harm if the plaintiff voluntarily faces a known and obvious risk and is therefore considered to have assumed liability for his own injuries. *Barrett v. Fredavid Builders, Inc.*, 454 Pa.Super. 162, 685 A.2d 129 (1996). Thus, there are two components to the doctrine: (1) the risk was perceived, and (2) the risk was faced voluntarily.

In this case, the first prong of this test fails because, as shown by Kevan's deposition testimony, which must be accepted as true for summary judgment purposes,[4] assistant coach Manesiotis had never before taken full swings at the baseball during an indoor practice in the allegedly poorly lit gymnasium. And even though Kevan did successfully field one ball before being struck, that first ball was a ground ball that Kevan was able to see only after it hit the floor of the gymnasium. The second ball, however, was a line drive that struck Kevan directly in the face. While there is case law holding that baseball players generally assume the risk of being hit by a batted ball, this is an unusual situation in which balls were being hit at an abnormally high velocity in an allegedly poorly lit gymnasium. There is at least a factual question as to whether Kevan assumed the risk on this particular occasion.

Accordingly, the order of the trial court is reversed and the case is remanded for trial.

ORDER

AND NOW, this 14th day of April, 1999, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is reversed and the case is remanded

4. See footnote 1.

for proceedings consistent with the foregoing opinion.

Jurisdiction relinquished.

FRIEDMAN, Judge, concurring.

Although I agree with the result reached by the majority, I cannot join because I do not find *Grieff v. Reisinger*, 548 Pa. 13, 693 A.2d 195 (1997), applicable here. (*See* Majority op. at 1007.) Accordingly, I concur.