# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lincoln Investors, L.P., : 
Lincoln Court, Inc., : 
               Appellants : 
                : 
           v. : No. 2646 C.D. 2015
                : Argued: October 20, 2016
Frank. A. King, Jr. and Glenn A. : 
King, Co-Executors of the Estate of : 
Frank King; Lizelton, Inc.; Sam and : 
Sal Associates; William J. Mangan; : 
Liberty Square Condominium : 
Association of Chester County; RFP : 
Properties, Inc.; 271, L.P.; East : 
Whiteland Township; County of : 
Chester, PA; Pennsylvania : 
Department of Environmental : 
Protection; Pennsylvania Department : 
of Transportation; F.W. Houder, Inc.; : 
Peter Krasas, Jr. and Associates, : 
Inc.; Edward A. Walsh and : 
Associates, Inc., Pancoast Clifford, : 
Inc.; Pickering Valley Contractors, : 
Inc.; and Lyons and Hohl : 

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE DAN PELLEGRINI, Senior Judge

OPINION
BY PRESIDENT JUDGE LEAVITT          FILED: December 22, 2016

       This Court has granted Lincoln Investors, L.P. and Lincoln Court, Inc.

(collectively "Lincoln") permission to appeal an interlocutory order of the Court of

Common Pleas of Chester County (trial court), which granted partial summary

judgment in favor of fifteen defendants[1] (collectively "Defendants") as to claims brought under the Storm Water Management Act (Act).[2] The trial court held that Defendants, consisting of surrounding property owners as well as state and local government entities, could not be held liable under Section 13 of the Act for flooding incidents that occurred before 2011, when Chester County adopted a watershed storm water plan. Lincoln argues that the trial court erred in its construction of the enforcement provisions of the Act, and this Court allowed Lincoln's appeal to consider this question.

## Background

Lincoln owns and operates a shopping center located on a 23-acre parcel in East Whiteland Township in Chester County, Pennsylvania that it has owned since 1987. The shopping center first experienced flooding with Hurricane Floyd in 1999. It experienced flooding again in 2003. From 2003 through 2011, flooding at the shopping center was sporadic. In 2011, Lincoln's shopping center experienced two flooding incidents. Lincoln contends that over time, the instances of flooding have increased in frequency and intensity.

To address this flooding, Lincoln engaged an engineer to determine the source of the problem and offer a solution. In January 2012, the engineer advised Lincoln that the flooding was caused by the inadequate underground storm

[1] The defendants are: Frank A. King, Jr. and Glenn A. King, Co-Executors of the Estate of Frank King; Lizelton, Inc.; Sam and Sal Associates; William J. Mangan; Liberty Square Condominium Association of Chester County; RFP Properties, Inc.; 271 L.P.; East Whiteland Township; County of Chester, PA; Pennsylvania Department of Environmental Protection; Pennsylvania Department of Transportation; F.W. Houder, Inc.; Peter Krasas, Jr. and Associates, Inc.; Edward A. Walsh and Associates, Inc.; Pancoast Clifford, Inc.; Pickering Valley Contractors, Inc.; and Lyons and Hohl.

[2] Act of October 4, 1978, P.L. 864, *as amended*, 32 P.S. §§680.1-680.17.

water management systems on surrounding properties. Lincoln filed suit in June 2012.

Lincoln filed an action against all Defendants alleging, *inter alia*, violations of Section 13 of the Act, for which it sought damages under Section 15(c) of the Act. 32 P.S. §§680.13, 680.15(c).[3] The trial court granted summary judgment in favor of Defendants on Lincoln's Section 13 claim that related to pre-2011 flooding incidents. The trial court construed Section 13 to establish a mechanism for ensuring compliance with a county's adoption of a "watershed storm water plan" under Section 4 of the Act, 32 P.S. §680.4. Accordingly, unless and until the county adopts a watershed storm water plan, a landowner cannot violate Section 13. Because Chester County adopted a watershed storm water plan in February 2011, the trial court held that Lincoln could pursue a Section 13 enforcement action as of February 2011.[4]

Lincoln petitioned for amendment of the trial court's order to certify it for interlocutory appeal[5] of the question of whether a watershed storm water plan is

---

[3] Additionally, Lincoln's complaint asserted common law claims for negligence, trespass, and nuisance against all Defendants. Reproduced Record at 181a-183a, 187a-188a.

[4] The trial court's order granted partial summary judgment to Defendant Sam and Sal Associates, Inc. for claims under Section 13 of the Act. Trial Court Order, 9/28/15, ¶2. The partial summary judgment dismissed the Section 13 claims based upon conduct that occurred prior to February, 2011, when the Chester County storm water management plan was adopted. However, the trial court denied summary judgment to Sam and Sal Associates, Inc. with respect to the Section 13 claims based on conduct occurring after February, 2011. Summary judgment was entered in favor of all other Defendants for Section 13 claims. Sam and Sal Associates, Inc. is the only defendant that was alleged to have engaged in land development after February, 2011.

[5] Section 702(b) of the Judicial Code authorizes jurisdiction over interlocutory appeals by permission. It states:

> When a court or other government unit, in making an interlocutory order in a matter in which its final order would be within the jurisdiction of an appellate court, shall be of the opinion that such order involves a controlling question of

**(Footnote continued on the next page . . .)**

required before an action may be brought under Section 13 of the Act. The trial court granted the petition, and on January 8, 2016, this Court granted Lincoln's petition for permission to appeal the trial court's judgment on the Section 13 claim.[6] The matter is now ready for disposition.[7]

## Analysis

The Storm Water Management Act was enacted in 1978 to manage the effects of storm water runoff. Specifically, the General Assembly expressly identified the purposes of the Act as follows:

> (1) Encourage planning and management of storm water runoff in each watershed which is consistent with sound water and land use practices.
>
> (2) Authorize a comprehensive program of storm water management designated to preserve and restore the flood carrying capacity of Commonwealth streams; to preserve to the maximum extent practicable natural storm water runoff regimes and natural course, current and cross-

---

**(continued . . .)**

law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter, it shall so state in such order. The appellate court may thereupon, in its discretion, permit an appeal to be taken from such interlocutory order.

42 Pa. C.S. §702(b). *See also* Pa. R.A.P. 1311(a) (stating "[a]n appeal may be taken by permission under 42 Pa. C.S. §702(b) (interlocutory appeals by permission) from any interlocutory order of a lower court or other governmental unit.").

[6] This Court denied Lincoln's petition for permission to appeal to the extent it sought review of the trial court's partial grant of summary judgment based on the statute of limitations.

[7] Where the question is one of statutory construction this Court's review is plenary as it poses a pure issue of law. *Frank Bryan, Inc. v. Workers' Compensation Appeal Board (Bryan, Dec.d.)*, 921 A.2d 546, 549 n.4 (Pa. Cmwlth. 2007). The scope of review from the granting of a motion of summary judgment is plenary; the standard of review is *de novo, i.e.,* whether the trial court committed an error of law. *City of Philadelphia v. Carpino*, 915 A.2d 169, 171 n.1 (Pa. Cmwlth. 2006).

4

section of water of the Commonwealth; and to protect and conserve ground waters and ground-water recharge areas.

(3) Encourage local administration and management of storm water consistent with the Commonwealth's duty as trustee of natural resources and the people's constitutional right to the preservation of natural, economic, scenic, aesthetic, recreational and historic values of the environment.

Section 3 of the Act, 32 P.S. §680.3.

To advance the statutory goal of managing storm water runoff, Section 5 of the Act requires each county to prepare and adopt a watershed storm water plan for each existing watershed.[8]  32 P.S. §680.5.  Section 5 gave counties two years following the promulgation of certain guidelines by the Department of Environmental Protection (Department) to adopt these plans.  On May 14, 1985, the Department promulgated its Storm Water Management Guidelines (Guidelines), which triggered the counties' responsibility to adopt a watershed storm water plan.

In spite of the Section 5 timetable, Chester County did not adopt a watershed storm water plan for the Valley Creek Watershed, where Lincoln's shopping center is located, until February of 2011.  Lincoln argues that liability can be imposed under the Act despite the County's delay in adopting a watershed storm water plan.  Defendants respond that the existence of a county-adopted watershed storm water plan is a prerequisite for liability under Section 13.

Section 15 of the Act creates civil remedies to enforce the provisions of the Act.  It states as follows:

---

[8] A "[w]atershed storm water plan" is defined as "[a] plan for storm water management adopted by a county in accordance with section 5."  Section 4 of the Act, 32 P.S. §680.4.

5

Civil remedies.

(a) *Any activity conducted in violation of the provisions of this act* or of any watershed storm water plan, regulations or ordinances adopted hereunder, is hereby declared a public nuisance.

(b) *Suits to restrain, prevent or abate violation of this act or of* any watershed storm water plan, *regulations or ordinances adopted hereunder*, may be instituted in equity or at law by the department, any affected county or municipality, or *any aggrieved person*. Except in cases of emergency where, in the opinion of the court, the circumstances of the case require immediate abatement of the unlawful conduct, the court may, in its decree, fix a reasonable time during which the person responsible for the unlawful conduct shall correct or abate the same. The expense of such proceedings shall be recoverable from the violator in such manner as may now or hereafter be provided by law.

(c) Any person injured by conduct which violates the provisions of section 13 may, in addition to any other remedy provided under this act, recover damages caused by such violation from the landowner or other responsible person.

32 P.S. §680.15(a)-(c) (emphasis added). In sum, Section 15 declares an activity that violates the Act or a regulation or ordinance adopted thereunder a public nuisance, which may be enjoined by an aggrieved party. 32 P.S. §680.15(a), (b). Where the activity violates Section 13 of the Act, the "person injured" by this conduct may seek damages. 32 P.S. §680.15(c).

Lincoln argues that Section 15 imposes civil liability for "any activity conducted in violation of" any one of the following: (1) the provisions of the Act, (2) any watershed storm water plan, (3) regulations adopted under the Act, or (4) ordinances adopted under the Act. It argues that the use of the disjunctive word "or" means that remedies pursuant to Section 15 of the Act are not limited to

6

conduct that violates the county's watershed storm water plan. Lincoln maintains that neither injunctive relief under subsection (b) nor damages under subsection (c) of Section 15 require the existence of a county watershed storm water plan as a prerequisite to liability.

We agree that a county's adoption of a watershed storm water plan is not a prerequisite for pursuing the remedies authorized by subsection (b) of Section 15. 32 P.S. §680.15(b). In *Merlino v. Delaware County*, 711 A.2d 1100 (Pa. Cmwlth. 1998), aggrieved landowners filed a mandamus action to compel Delaware County to prepare and adopt a watershed storm water plan for the Darby Creek Watershed. The county argued that the aggrieved landowners lacked standing. In rejecting the county's argument, this Court explained that

> [s]ection 15 provides that civil remedies are available not only for violations of any watershed plan, or of any regulation or ordinance adopted with respect to the plan, *but also of any violation of the Act itself*. The Act principally addressed the duties of the counties of the Commonwealth to adopt, submit, and implement storm water management plans.

*Id.* at 1105 (emphasis added). Accordingly, we held that under subsection (b) "an aggrieved private citizen may bring an action to address violations of the Act under Section 15." *Id.* In short, subsection (b) authorizes an aggrieved person to pursue equitable-type remedies for any violation of the Act, a regulation or an ordinance as well as a violation of a county's watershed storm water plan.

On the other hand, the remedy authorized by Section 15(c) requires a different analysis. It states that

> [a]ny person injured by conduct which violates the provisions of section 13 may, in addition to any other remedy provided under this act, recover damages caused by such violation from the landowner or other responsible person.

7

32 P.S. §680.15(c).  The prerequisite to an action for damages under Section 15(c) is a violation of Section 13 of the Act.  Lincoln argues that a landowner can violate the provisions of Section 13 even where there is no watershed storm water plan in place.

> Section 13 of the Act states as follows:
>
> Duty of persons engaged in the development of land.
>
> *Any landowner* and any person engaged in the alteration or development of land which may affect storm water runoff characteristics *shall implement such measures consistent with the provisions of the applicable watershed storm water plan as are reasonably necessary* to prevent injury to health, safety or other property.  Such measures shall include such actions as are required:
>
>> (1)  To assure that the maximum rate of storm water runoff is no greater after development than prior to development activities; or
>>
>> (2)  To manage the quantity, velocity and direction of resulting storm water runoff in a manner which otherwise adequately protects health and property from possible injury.

32 P.S. §680.13 (emphasis added).  Lincoln offers several arguments in support of its view that Section 13 addresses more than conduct that violates the terms of an "applicable watershed storm water plan."

First, Lincoln contends that the above-quoted language does not require a watershed storm water plan to be in place.  Rather, it directs the person engaged in land development to act in a manner consistent with the plan *if* one is in place.  Lincoln Brief at 23 (internal quotations omitted).

Second, Lincoln contends that the trial court's construction gives no effect to subsections (1) and (2) of Section 13, which contain specific standards that a landowner or land developer must satisfy. Lincoln reasons that subsections (1) and (2) of Section 13 state requirements that must be encompassed by watershed storm water plans enacted by the county but also create duties that "any landowner and any person engaged in the ... development of land" must fulfill. 32 P.S. §680.13. Subsection (1) requires a developer not to increase the maximum rate of storm water runoff; subsection (2) requires the developer to manage storm water as necessary to protect property. Neither subsection needs a watershed storm water plan to be capable of implementation.

Defendants respond that the first sentence in Section 13 requires a landowner to "implement *such measures* consistent with the provisions of the applicable watershed storm water plan." 32 P.S. §680.13 (emphasis added). Subsections (1) and (2) describe "[s]uch measures" that must be undertaken. *Id.* Defendants contend that Lincoln's construction requires the addition of "if" to Section 13, which cannot be done. *In re Upper Chichester Township*, 415 A.2d 1250, 1252 (Pa. Cmwlth. 1980) (a court may not "insert words into statutory provisions where the legislature has failed to supply them."). In sum, Defendants contend that Section 13 requires a landowner to take measures consistent with the applicable watershed storm water plan, and it cannot implement "such measures" consistent with a plan before it comes into existence.

The object of all statutory construction is to ascertain and effectuate the intention of the General Assembly. 1 Pa. C.S. §1921(a).[9] "When the words of

---

[9] It states:

**(Footnote continued on the next page . . .)**

9

a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa. C.S. §1921(b).

We agree with Defendants. Section 13 must be read in its entirety. *Roethlein v. Portnoff Law Associates, Ltd.*, 81 A.3d 816, 822 (Pa. 2013) ("[i]n giving effect to the words of the legislature, we should not interpret statutory words in isolation, but must read them with reference to the context in which they appear."). The subsections of Section 13 simply elaborate on the measures a developing landowner must take with respect to a watershed storm water plan: (1) maintain the current storm water runoff rate and (2) manage the runoff in a manner which protects health and property. 32 P.S. §670.13(1), (2).

This construction is consistent with this Court's decision in *Bahor v. City of Pittsburgh*, 631 A.2d 731 (Pa. Cmwlth. 1993), in which Bahor brought a claim against the City of Pittsburgh, alleging that the City's development of land caused flooding and damage to his property. A jury awarded damages to Bahor pursuant to Section 15(c) of the Act. The City filed a post-verdict motion for judgment n.o.v. on the grounds that its conduct was not proscribed by the Act. The trial court granted the motion, holding that the Act applies only to drainage associated with large-scale developments. The amount of storm water running onto Bahor's land from the City's development was not of sufficient magnitude to trigger liability under the Act.

---

**(continued . . .)**

> [t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions.

1 Pa. C.S. §1921(a).

10

This Court reversed the trial court's ruling to the extent it held that the Act did not apply to the City's "minor" activity. We explained:

> Bahor showed that the City's alteration of the adjacent property increased the storm water runoff onto his land and caused damage. The alteration violated both Sections 13(1) and 13(2) [of the Act] because it increased the rate of runoff and failed to control the runoff in a manner which protected neighboring property. This evidence, offered with evidence of an *applicable storm water management plan*, might allow Bahor relief under Section 15.

*Bahor*, 631 A.2d at 732 (emphasis added). However, we upheld the judgment n.o.v. because Bahor had "failed to introduce evidence of an applicable *watershed storm water plan.*" *Id.* at 733 (emphasis added). In the absence of that evidence, this Court could not determine whether the City had violated Section 13 of the Act. *Id.* We held that it was the obligation of the complaining plaintiff "to introduce the applicable *storm water management plan* and any alleged violation thereof, under Sections 13 and 15 of the Act." *Id.* (emphasis added).

Lincoln responds that *Bahor* established that either a county watershed storm water plan or a municipal storm water management plan can provide the basis for liability under the Act. In support, it notes that the *Bahor* opinion used two different phrases: "storm water management plan" and "watershed storm water plan," which, according to Lincoln, have different meanings. A "watershed storm water plan" is defined in Section 4 of the Act as "[a] plan for storm water management adopted by a *county* ...." 32 P.S. §680.4 (emphasis added). By contrast, "storm water management plan" is not defined and, thus, broader in scope and can include a plan adopted by a township or municipality that is site-specific. Lincoln Brief at 30. Bahor needed to offer proof

11

of a county watershed storm water plan, as defined under the Act, *or* a municipal storm water management plan. Bahor's claim failed because he did not offer proof of *either* a county "watershed storm water plan," or a township, municipal, or site-specific "storm water management plan."

Defendants acknowledge that the *Bahor* opinion uses this different phraseology but contend that this has no particular significance. The opinion in *Bahor* does not identify a "watershed storm water plan" as a county plan and a "storm water management plan" as a municipal, township, or site-specific plan. What is more, Defendants note that "watershed storm water plan" is defined in Section 4 of the Act as "a plan for storm water management."

We agree with Defendants that the terms "watershed storm water plan" and "storm water management plan" were not chosen for any purpose other than for reasons of style. In *Bahor*, the Court was consistent in holding that "a watershed storm water plan" was defined in Section 4 of the Act, 32 P.S. §680.4.[10] We reject Lincoln's contrary argument.

Finally, we address Lincoln's reliance on this Court's decision in *Glencannon Homes Association, Inc. v. North Strabane Township*, 116 A.3d 706 (Pa. Cmwlth. 2015) (en banc) to support its position.

In *Glencannon*, a homeowners association maintained a neighborhood pond for the purpose of storm water retention and sedimentation control for the residential units. A local school district constructed a new sports complex on township land located north of the association's pond. As a result of the new

---

[10] *Bahor* concludes by stating "we uphold Judgment N.O.V. on the grounds that Bahor failed to introduce evidence of an applicable watershed storm water plan." *Bahor*, 631 A.2d at 733. Thus, in its ultimate conclusion, the Court used the statutory defined term "watershed storm water plan." 32 P.S. §680.4.

construction, whenever it rained, water, sediment, and other debris flowed from the sports complex into the pond. The association brought a claim against the school district and township seeking damages for negligence and violations of the Act.

After a jury trial, a verdict was returned in favor of the association on its claims for violations of the Act and for negligence. After various post-trial motions, the trial court issued an opinion that focused on the molding of the jury verdict in accordance with the Political Subdivision Tort Claims Act, 42 Pa. C.S. §§8541-8542. It also addressed the statute of limitations, the contents of the verdict slip, and the denial of the township's motion *in limine* to exclude expert testimony. The trial court briefly addressed the argument that "one cannot violate the [Act] unless one has violated the relevant county's storm water management plan." *Glencannon Homes Association, Inc. v. North Strabane Township* (No. 51 CD 2014, filed 4/14/2014); 2014 Pa. D. & C. Dec. LEXIS 561, *10. It stated as follows:

> Under this interpretation, the [s]chool [d]istrict posits that the verdict was incorrect because [the association] offered "no evidence that any county storm water management plan had been violated."… While the [s]chool [d]istrict is correct that the [Act] requires land alterations to be consistent with a county's plan, the [s]chool [d]istrict seemingly ignores the rest of Section 13. The trial record is replete with evidence to support the jury's finding that the [s]chool [d]istrict's development of the sports complex did not sufficiently control the rate, quantity, velocity and direction of the storm water runoff in a manner that adequately protected [the pond]. Therefore, the [s]chool [d]istrict's argument fails.

*Id.* at 7-8;*10-11. This Court affirmed the trial court, holding that the verdict was properly molded in accordance with the Political Subdivision Tort Claims Act; the association's action was brought within the applicable statute of limitations period;

13

the verdict slip was appropriate; and the trial court properly denied the motion *in limine.*

Lincoln argues that this Court's affirmance of the judgment of the trial court constituted a rejection of the school district's argument that a watershed storm water management plan is a prerequisite for a violation of Section 13 of the Act. Further, by affirming the trial court, this Court adopted its above-quoted analysis. Hence, under *Glencannon* this Court must hold that a county-adopted watershed storm water management plan is not required to pursue damages for a violation of Section 13 of the Act.

An appellate court may affirm a decree for reasons other than those given by the court below. *Kraiser v. Horsham Township*, 455 A.2d 782, 784 (Pa. Cmwlth. 1983). In *Glencannon*, the trial court treated the conduct set forth in subsections (1) and (2) as separable from a county watershed storm water management plan. Stated otherwise, it believed that a landowner can be held liable under either subsection even if it did comply with the applicable watershed storm water plan. However, this Court did not address that portion of the trial court opinion. Our analysis and holding focused on the molding of the verdict, statute of limitations, contents of the verdict slip, and the trial court's denial of the motion *in limine*. Our affirmance of the trial court did not bind this Court to all of the language in the trial court's opinion. The issue of whether a county-adopted watershed storm water plan is a prerequisite to liability for violating Section 13 of the Act was never raised on appeal in *Glencannon* and not addressed by this Court. Accordingly, we reject Lincoln's contention that *Glencannon* is dispositive here.

14

## Conclusion

In sum, we hold that a violation of Section 13 of the Act requires a showing that the landowner's conduct violated the terms of a county-adopted watershed storm water plan, as defined in Section 4 of the Act. It follows, then, that a watershed storm water plan is a prerequisite for the imposition of liability under Section 15(c) of the Act, 32 P.S. §680.15(c). Accordingly, we affirm the trial court's grant of summary judgment to Defendants as to Lincoln's claim for damages under Section 13 of the Act that took place prior to February 2011, when Chester County adopted a watershed storm water plan.

_____
MARY HANNAH LEAVITT, President Judge

15

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lincoln Investors, L.P.,       :
Lincoln Court, Inc.,       :
       Appellants     :
       :
       v.       :    No. 2646 C.D. 2015
       :
Frank. A. King, Jr. and Glenn A.   :
King, Co-Executors of the Estate of :
Frank King; Lizelton, Inc.; Sam and :
Sal Associates; William J. Mangan; :
Liberty Square Condominium   :
Association of Chester County; RFP :
Properties, Inc.; 271, L.P.; East   :
Whiteland Township; County of   :
Chester, PA; Pennsylvania    :
Department of Environmental   :
Protection; Pennsylvania Department :
of Transportation; F.W. Houder, Inc.; :
Peter Krasas, Jr. and Associates,  :
Inc.; Edward A. Walsh and    :
Associates, Inc., Pancoast Clifford, :
Inc.; Pickering Valley Contractors, :
Inc.; and Lyons and Hohl    :

# **O R D E R**

AND NOW, this 22nd day of December, 2016, the order of the Court of Common Pleas of Chester County dated November 16, 2015, in the above-captioned matter, is hereby AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge