561 A.2d 853

**CANON–McMILLAN SCHOOL DISTRICT, Appellant,**

v.

**Teddy S. BIONI, Appellee.**

Commonwealth Court of Pennsylvania.

On Remand from the Supreme Court
April 7, 1989.

Decided July 13, 1989.

Reargument Denied Sept. 29, 1989.

318

John C. Pettit, W. Patric Boyer, Pettit & Johnson, Washington, for appellant.

Samuel Y. Stroh, Paul W. Stefano, Pittsburgh, for appellee.

Before CRUMLISH, Jr., President Judge, and DOYLE, BARRY, COLINS, PALLADINO, McGINLEY and SMITH, JJ.

PALLADINO, Judge.

This case is before us on remand from the supreme court. In *Canon–McMillan School District v. Bioni* (*Canon–McMillan I*), 110 Pa. Commonwealth Ct. 584, 533 A.2d 179 (1987), we reversed the order of the Washington County Court of Common Pleas (trial court) denying Canon–McMillan School District's (School District) motion for post-trial relief, and ordered a new trial. The School District appealed to the supreme court. The matter was remanded to this court for a determination of the legal question of whether the wood lathe involved in this case is realty or personalty.[1] *Canon–McMillan School District v. Bioni* (*Canon–McMillan II*), 521 Pa. 299, 555 A.2d 901 (1989). If the lathe is real property, then Bioni's cause of action falls within the real property exception to immunity found in section 202 of the Political Subdivision Tort Claims Act (Act).[2] If the lathe is personalty, then the legislature has not waived the immunity of the School District, and, accordingly, the School District is immune from suit.

The background facts are as follows. In March of 1979, Teddy S. Bioni suffered an injury to his left eye when a wooden bowl, which Bioni was sanding on a wood lathe, broke apart. At the time, Bioni was performing an in-class assignment for his "Industrial Materials" course at Canon–McMillan High School. In 1981, Bioni filed a trespass action against the School District. In its answer and new matter, the School District pleaded the affirmative defense of governmental immunity under the Act.

In November of 1983, the School District filed a motion for summary judgment, which was denied by the trial court. Thereafter, in October of 1985, a jury trial was held. At the appropriate stages of the proceedings, the School District made motions for a compulsory nonsuit and a directed

---

1. The supreme court directed that the determination be made on the present record.

2. Act of November 26, 1978, P.L. 1399, *as amended, formerly* 53 P.S. §§ 5311.101–5311.803, repealed and substantially reenacted by the Act of October 5, 1980, P.L. 693, *as amended,* 42 Pa.C.S. §§ 8541–8564.

verdict; the trial court denied both motions. The jury returned a verdict in favor of Bioni, and awarded damages of $150,000. The School District filed a motion for post-trial relief, requesting, alternatively, judgment notwithstanding the verdict (JNOV) or a new trial. The trial court, en banc, denied the School District's motion for post-trial relief and directed judgment on the verdict. The School District appealed to this court.

Upon appeal, the School District argued, inter alia, that the uncontroverted facts of the case established that the lathe was personalty; accordingly, the School District argued, Bioni's cause of action could not fall within the real property exception to immunity. Additionally, the School District argued that the question of whether the lathe is personalty or realty is one of law, and, therefore, the question should not have been submitted to the jury. We concluded that because a determination of intent was necessary, the trial court did not err in submitting to the jury the question of whether the lathe is realty or personalty. The supreme court has ordered that we determine, as a matter of law, whether the lathe is realty or personalty.

We note here, as we did in *Canon–McMillan I*, the supreme court's seminal language on questions of the legal status of property:

> Chattels used in connection with real estate are of three classes: First, those which are manifestly furniture, as distinguished from improvements, and not peculiarly fitted to the property with which they are used; these always remain personalty.... Second, those which are so annexed to the property, that they cannot be removed without material injury to the real estate or to themselves; these are realty.... Third, those which, although physically connected with the real estate, are so affixed as to be removable without destroying or materially injuring the chattels themselves, or the property to which they are annexed; these become part of the realty or remain personalty, depending on the intention of the parties at the time of annexation....

*Clayton v. Lienhard,* 312 Pa. 433, 436–37, 167 A. 321, 322 (1933). We concluded in *Canon–McMillan I* that the lathe falls into the third category noted by the supreme court. We have again reviewed the record in this case,[3] and, once again we conclude that the lathe falls into the third category. The record clearly establishes that the lathe is physically connected with the real estate, and that it can be removed without destroying or materially injuring the lathe or the property to which it is annexed. Thus, the lathe could be personalty or realty, depending on the intention of the parties at the time of annexation.

In determining intent, " 'it is not so much what a particular party intended his legal rights to be, as it is what intended use of the property was manifested by the conduct of the party.' " *McCloskey v. Abington School District,* 101 Pa. Commonwealth Ct. 110, 114, 515 A.2d 642, 644 (1986)[4] (quoting Clothier, *The Law of Fixtures in Pennsylvania,* 32 Pa.B.Q. 66, 66–67 (1960–61)). The conduct of the School District establishes that it did not intend to make the lathe part of the realty. The undisputed facts, as detailed in *Canon–McMillan I,* 110 Pa. Commonwealth Ct. at 594, 533 A.2d at 183, are as follows:

> [T]he wood lathe (1) was cast iron and weighed approximately 800 pounds, (2) had holes in each of its four feet for attachment but had not been attached to the floor, (3) was connected with a flexible electric wire to an electrical duct on the wall at the time of the accident, (4) had been moved to a different room at least once, and (5) had been moved short distances within the classroom for cleaning, coursework and classroom redesign.

School District witnesses testified that the lathe had not been attached to the floor because the industrial arts department needed flexibility, N.T. at 178–181, 198; that the

3. Our review included the post-submission supplements to the record filed by the parties. The School District submitted a transcript of a conference with the trial court, and Bioni submitted testimony from a classmate, John White. The parties had originally agreed that these portions of the transcript were not necessary for review.

4. We concluded in *McCloskey,* as we did in *Canon–McMillan I,* that intent is a question for the fact finder.

industrial arts program was modified at the direction of the Department of Education to accommodate an exploratory program, N.T. at 176, 184–85; that the lathe had been moved to different classrooms within the school and within the classroom itself, N.T. at 179, 183, 198, 202–03; that at the time of installation the lathe was plugged into a conventional 220 electrical outlet, N.T. at 184; and that at the time of the accident the lathe was hardwired to the wall of the classroom. N.T. at 89. Thus, as we noted in *Canon–McMillan I*, the lathe is connected to the realty only by gravity and an electrical connection.

Given these circumstances, we hold, as a matter of law, that the lathe at issue here is personalty and, therefore, Bioni's cause of action against the School District does not fall within the real property exception to immunity. Thus, the trial court committed an abuse of discretion in refusing to grant JNOV to the School District.

Accordingly, the trial court's order denying post-trial relief will be reversed, the case will be remanded, and the trial court will be directed to enter judgment in favor of the School District.

## ORDER

AND NOW, July 13, 1989, the order of the Court of Common Pleas of Washington County in the above-captioned matter is reversed and the case is remanded to the Court of Common Pleas of Washington County with direction to enter judgment in favor of Canon–McMillan School District.

Jurisdiction relinquished.

CRAIG, J., did not participate in this case.

SMITH, J., dissents.

## OPINION

CRUMLISH, Jr., President Judge, dissenting.

I respectfully dissent for the reasons set forth in my dissent to this Court's previous majority disposition in *Can-*

*on–McMillan I.* Notwithstanding the Supreme Court's instruction to decide the legal question of whether a wood lathe constitutes realty or personalty, the law of fixtures places chattels used in connection with real estate into three classes. *Clayton v. Lienhard,* 312 Pa. 433, 167 A. 321 (1933). This lathe, physically connected with the real estate but so affixed as to be removable, falls into the third class, which may be realty or personalty, *"depending upon the intention of the parties...."* *Id.,* 312 Pa. at 437, 167 A. at 322. (emphasis added). Intent, or state of mind, though not easily susceptible of proof, must be inferred from the *facts.*

I remain convinced that the jury properly performed its fact-finding function in determining that the School District *intended* the lathe as a fixture. While the opposite conclusion might also be drawn from the underlying facts, such a reweighing of the evidence is not the function of an appellate court where the jury's conclusion is not patently unreasonable.

DOYLE, J., joins in this dissent.