**Andrew Charles LoFURNO, a Minor by and through His Parents and Natural Guardians, Robert A. LoFURNO and Monica U. LoFurno, h/w**

v.

**GARNET VALLEY SCHOOL DISTRICT, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Feb. 28, 2006.

Decided May 3, 2006.

Publication Ordered Aug. 23, 2006.

Harry G. Mahoney, Philadelphia, for appellant.

John A. Fitzpatrick, Broomall, for appellees.

BEFORE: LEADBETTER, Judge, and COHN JUBELIRER, Judge, and KELLEY, Senior Judge.

OPINION BY Judge LEADBETTER.

Garnet Valley School District (School District) appeals from an interlocutory order of the Court of Common Pleas of Delaware County (common pleas), concluding that the School District's vertical belt sander was a fixture for purposes of the real estate exception to governmental immunity.[1] The School District argues that common pleas erred in concluding, as a matter of law, that the belt sander was a fixture for purposes of the real property exception to governmental immunity set forth in the Act commonly referred to as the Political Subdivision Tort Claims Act (Tort Claims Act), 42 Pa.C.S. §§ 8541–8542. We agree and reverse.

On April 29, 2002, Andrew Charles LoFurno, then a 15–year old ninth grader at Garnet Valley High School, injured the fingers of both hands while operating a vertical belt sander during a class taught by Scott Xanthopoulos. As a result of getting his fingers caught between the belt and the sander table, Andrew allegedly suffered permanent damage to his right and left index fingers.[2]

The LoFurnos filed their complaint against the School District on November 24, 2003, alleging that the belt sander was a fixture and that the School District was negligent in its care, custody and control of the belt sander. The LoFurnos claimed that the School District failed to provide, install, or implement any kind of safety measures to guard against contact with the vertical belt of the sander, and failed to place any warnings or identification labels on the sander. Furthermore, the LoFurnos alleged that the School District was negligent for not properly supervising or instructing its agents, servants or employees in the proper procedures for conducting a woodshop class involving a fixture of a dangerous nature.

Following discovery, the School District filed a motion for summary judgment claiming that the sander was personal property, not a fixture, such that it did not fall under the real property exception to governmental immunity. While the court denied the School District's motion for summary judgment, the parties agreed during oral argument on the motion for summary judgment that the court would hold an evidentiary hearing to decide the sole issue of whether the sander was a fixture or personalty.

During the evidentiary hearing that followed, the LoFurnos submitted into evidence the School District's answers to interrogatories, in which the School District Business Administrator stated that the belt sander was bolted to the floor. The LoFurnos also offered into evidence the report of the School District's insurance claims adjustor, Stuart Jacobs, who inspected the sander on November 13, 2002 (approximately five and one-half months

1. Pursuant to 42 Pa.C.S. § 702(b), common pleas found its order involved a controlling question of law as to which there was a substantial difference of opinion and that an immediate appeal would "materially advance the ultimate termination of the matter." Common pleas' order of September 12, 2005. This court then granted permission to appeal pursuant to Pa. R.A.P. 1311.

2. The complaint alleges damaged and severed tendons and severe and permanent loss of a bodily function and permanent disfigurement. The LoFurnos claim that approximately 75% of the tendon on Andrew's right index finger was sanded away.

after the accident), and stated that the machine was bolted to the floor. The Lo-Furnos also submitted excerpts of the deposition transcript of Theodore Fleck, one of the School District's Technology Education teachers, who stated that the sander was connected to a dust collection system in the shop classroom and plugged into a 220-volt electrical outlet. In the same deposition, Fleck also stated that the sander was routinely unhooked from the dust collection system and the sander was moved or slid across the floor for cleaning and to stack excess lumber behind the nearby miter box saw.

The School District's witnesses included two Technology Education teachers, Fleck and Xanthopoulos, and John Coyle III, a real estate appraiser. Fleck and Xanthopoulos testified separately that, while there were bolts in the floor, the sander had never been affixed onto the bolts during their respective tenures at the School District. Fleck testified that he had moved the sander slightly to accommodate a new spindle sander in the classroom. Xanthopoulos testified that the sander was tilted or slid around for cleaning, to get wood behind it and to put large pieces of material on the spindle sander next to it. However, under cross-examination, Xanthopoulos agreed that the machine was built with holes drilled into the base to allow it to be bolted to the floor and that it would be safer to have the sander bolted down.

Fleck and Xanthopoulos also testified that the sander was attached to a dust collection vacuum system. They stated that the flexible hose connecting the sander to the system, which slid on and off, was routinely removed for cleaning. Moreover, they noted that there were a number of portals throughout the room to which the sander could be connected to the vacuum system. Fleck stated that the sander was one of six pieces of equipment with a 220-volt, four-prong plug and there were nine 220-volt receptacles throughout the classroom. Also, Fleck explained that there were five larger pieces of equipment in the classroom that were hardwired into the electrical system. Fleck testified that the sander could be moved as long as it was in a location convenient to a portal to the dust collection system and a 220-volt receptacle. However, Fleck agreed that there was no other place near a 220-volt outlet where there were bolts in the floor to accommodate the sander. Coyle testified the sander was not bolted to the floor and that it would not fit over the bolts because of the restriction placed by the exhaust at the back of the machine. In addition, the School District introduced a post-accident videotape into evidence showing the sander being disconnected from the dust collection system and moved for cleaning.

Following the hearing, common pleas concluded that the sander was, as a matter of law, a fixture, not personalty. In its opinion, common pleas stated that the sander was permanently affixed to the floor by bolts, which would have to be cut off to use the space occupied by the sander for another purpose and to prevent students from tripping over them. Furthermore, common pleas stated that the electrical line was physically connected to the location of the sander and that the classroom had been physically altered to accommodate the electrical requirements of the sander. Common pleas found that the School District intended to permanently affix the sander because the sander was physically attached to the floor by the bolts and that the dust collection system and the electrical system were connected to the sander as an integrated and perma-

nent unit.[3]

As we noted in *Wells v. Harrisburg School District*, 884 A.2d 946 (Pa.Cmwlth. 2005), school districts, as local government agencies, are generally immune from tort liability under the Tort Claims Act. *See* 42 Pa.C.S. § 8541. There are limited exceptions to such immunity and an injured party may recover in tort from a local governmental agency if:

(1) damages would be otherwise recoverable under common law or statute; (2) the injury was caused by the negligent act of the local agency or an employee acting within the scope of his official duties; and (3) the negligent act of the local agency falls within one of eight enumerated categories.

*Wells*, 884 A.2d at 948 (citing 42 Pa.C.S. § 8542). Real property is an enumerated exception to immunity. *Id. See* 42 Pa.C.S. § 8542(b)(3). Section 8542 provides an exception to immunity for the "care, custody or control of real property in the possession of the local agency, except that the local agency shall not be liable for damages on account of any injury sustained by a person intentionally trespassing on real property in the possession of the local agency." *Id.* [quoting 42 Pa.C.S. § 8542(b)(3)].

■ At issue is whether the sander falls under the real property exception to governmental immunity set forth in Section 8542(b)(3). Whether a chattel, such as the sander, is real property or personal property is as a question of law, based upon facts as to the property owner's manifest conduct. *Wells*, 884 A.2d at 950 [citing *Wilson v. Ridgway Area Sch. Dist.*, 141 Pa.Cmwlth. 607, 596 A.2d 1161, 1164 (1991)]. Our courts have applied the following principles to determine whether a chattel used in connection with real estate constitutes personalty or realty:

First, those [chattels] which are manifestly furniture, as distinguished from improvements, and not peculiarly fitted to the property with which they are used; these always remain personalty. Second, those which are so annexed to the property, that they cannot be removed without material injury to the real estate or to themselves; these are realty, even in the face of an expressed intention that they should be considered personalty. . . . Third, those which, although physically connected with the real estate, are so affixed as to be removable without destroying or materially injuring the chattels themselves, or the property to which they are annexed; these become part of the realty or remain personalty, depending on the intention of the parties at the time of annexation; in this class fall such chattels as boilers and machinery affixed for the use of an owner or tenant but readily removable.

*Clayton v. Lienhard*, 312 Pa. 433, 436–37, 167 A. 321, 322 (1933) (citations omitted).

---

**3.** In its opinion, common pleas inexplicably discussed at length the standard for deciding a motion for summary judgment, including that it must examine the record in the light most favorable to the non-moving party, but then went on to discuss the case in a manner which appears to be making findings of fact and reaching conclusions of law on a discreet issue (immunity) bifurcated from the remainder of the case. *See* Common pleas' opinion at 2 (No. 03–12045, dated November 14, 2005). We have viewed those findings and conclusions as such, given that the District's motion for summary judgment was denied prior to the evidentiary hearing, that such a bifurcation appears to be what the court and counsel contemplated when the hearing was scheduled, and that the order accompanying the opinion not only recited the earlier denial of summary judgment but went on to state "It is further ORDERED and DECREED, that the belt sander ... is, as a matter of law, a fixture...."

*Accord Wilson v. Ridgway Area Sch. Dist.*, 596 A.2d at 1164; *Canon–McMillan Sch. Dist. v. Bioni*, 127 Pa.Cmwlth. 317, 561 A.2d 853, 854 (1989).[4]

On appeal, the School District argues that common pleas erred in concluding that the sander constituted a fixture rather than personalty. According to the School District, the sander falls within the third type of chattel discussed above and there is no evidence to support the finding that the School District intended that the machine become a part of the real property. In addition, the School District contends that there was no evidence to support common pleas' finding that the sander was "permanently affixed" to the floor.[5] Also, the School District argues that there was no evidence that the electrical receptacle closest to the sander was located there specifically for the sander, or that the classroom was physically altered to accommodate the electrical requirements of the sander. To the contrary, the School District points out that the sander could be plugged into any of the nine electrical receptacles located around the room. In addition, the School District argues that the flexible hose connection to the dust collection system was removed routinely for cleaning and could fit several other portals to the dust collection system around the room.

The School District argues that while there is no evidence of its actual intent at the time the sander was installed, evidence demonstrating an intent for the sander to be permanently affixed would have been bolts permanently welded to the sander, a hardwired connection to the electrical system, a dedicated emergency shut-off switch and a permanent attachment to the dust collection system.[6] Therefore, the School District argues that the record supports the conclusion that the School District intended for the sander to be personal property.[7]

4. Here, common pleas found that the sander fit into the second and third categories of chattel. *See* Common pleas' opinion at 3–4. Neither *Clayton* nor subsequent cases tell us what it is about the intention of the owner at the time of annexation which the court is supposed to ascertain. Many cases seem to focus on whether the item has been moved around or has been left in the same place since annexation. This, however, would seem to tell us little more than that the location is the most practical or convenient. It is suggested, rather, that to conclude that the chattel has been made part of the real estate, one should have to find an intent that the property would remain connected to the building (or land) even if the owner relocated. Such a standard has not been applied here, however, and resolving this question is unnecessary to our disposition.

5. In this regard, the School District reargues that the sander has not been mounted on bolts since at least 1996 and there have never been any nuts to screw onto the bolts to hold the machine in place. This evidence appears clearly to have been rejected by common pleas, however.

6. The LoFurnos, on appeal, contend that photographs submitted into evidence demonstrate that the flexible hose connection was "riveted" to the back of the sander. However, while common pleas made no findings in this regard, the riveting of the flexible hose is not apparent from these photographs and no testimony is provided to support such a finding. To the contrary, the two School District teachers testified that there were no rivets securing the flexible hose onto the sander and that the hose connection was easily and routinely detached.

7. The School District notes that, in addition to the factors addressed in *Clayton* and *Wilson*, the court has also considered the extent to which the chattel is essential to the permanent use of the building in determining whether a chattel is a fixture. *See Gore v. Bethlehem Area Sch. Dist.*, 113 Pa.Cmwlth. 394, 537 A.2d 913, 915 (1988) (concluding that a chin-up bar in a school doorway was personalty and not a fixture because it was lightweight, easily removed without damage to the building and not essential for the continued use of the realty to which it was annexed).

This court has dealt with the issue of whether evidence of a property owner's manifest conduct demonstrated the intent for woodshop equipment to be personalty or a fixture in several other cases. In two recent cases, the court found that a piece of equipment was a fixture because it was bolted to the floor, had not been moved for a considerable number of years, and was electrically hardwired. In *Wells*, the court found that the table saw on which a student injured his hand was intended to be a fixture because it was bolted to the floor, had not been moved since 1985, was hardwired through a metal conduit running through the floor into a breaker box electrical panel, and was attached to a vacuum blower by flexible tubing connected by an outside contractor. 884 A.2d at 951. Similarly, in *Cureton v. Philadelphia School District*, 798 A.2d 279 (Pa.Cmwlth.2002), *appeal denied*, 573 Pa. 666, 820 A.2d 704 (2003), the court found that the school district intended for the scroll saw to be a fixture because it was bolted down with four bolts, had not been moved since 1987, and was permanently hardwired through the building to the main power supply.

On the other hand, this court concluded that woodworking equipment was personalty in two other cases with facts similar to this case. In *Wilson*, the court found that the school district did not intend the table saw to be a fixture because, despite its substantial weight, it was not attached to the floor, but only physically connected to the real estate by electrical cords, and it was occasionally moved for cleaning purposes. 596 A.2d at 1164–65. Similarly, in *Canon–McMillan School District*, the court found that an 800–pound cast iron lathe was intended to be personalty be-cause, although it had holes for attachment, the lathe had not been bolted down, and had been moved to a different room at least once and moved short distances within in the classroom for cleaning, coursework and classroom redesign. 561 A.2d at 855.

█ Here, we agree with the School District that many of common pleas' findings and conclusions are not supported by the record. While the evidence, albeit thin,[8] supports the finding that the sander was bolted to the floor, the record is devoid of evidence that, once bolted, the machine could not easily be unbolted in order to be moved, let alone that to do so would cause material injury to the classroom or the sander. Thus, common pleas' conclusion that the sander fell into the second category of chattel is entirely without factual foundation. Moreover, there is no evidence of hardwiring, dedicated electrical lines or permanent attachment to a dust collection system. Rather, the only evidence offered indicates that the equipment was plugged into a receptacle, rather than hardwired, and simply attached to a dust collection system from which it was easily removed for cleaning. There was no evidence that the classroom had been physically altered to accommodate the electrical requirements of the sander or that the sander must remain in its current location in order to physically connect to either the 220–volt electrical line or the dust collection system. Finally, the fact that the sander can be bolted only to one location is not dispositive. Rather, that fact, without more, indicates only that the School District determined that this was the best location for the sander in the classroom. Based upon the factors considered in the

---

**8.** As noted above, all the testimonial evidence (which came from the teachers who worked with the machine) was that the machine was not bolted down. However, an interrogatory response from the School District Business Administrator and the report of a claims adjuster who inspected the machine several months after the accident stated without further detail that it was bolted to the floor.

above precedents, we conclude that evidence of bolting alone is insufficient to support a conclusion that the School District intended the sander to be permanently affixed to the real estate; this is especially so where it is beyond dispute that such equipment is understandably safer if secured to the floor. Thus, the record and the supported findings mandate the conclusion that the equipment was personalty, not a fixture, as a matter of law.

Accordingly, the order is reversed.

### ORDER

AND NOW, this 3rd day of May, 2006, the order of the Court of Common Pleas of Delaware County in the above captioned matter is hereby REVERSED.