**Evelyn M. TAYLOR and Frank Taylor, Appellants**

v.

**NORTHEAST BRADFORD SCHOOL DISTRICT.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 8, 2014.

Decided Oct. 9, 2014.

---

Shannon M. Pringle, Towanda, for appellant.

Richard A. Polachek, Wilkes–Barre, for appellee.

BEFORE: BERNARD L. McGINLEY, Judge, MARY HANNAH LEAVITT, Judge, and JAMES GARDNER COLINS, Senior Judge.

OPINION BY Judge LEAVITT.

Evelyn M. Taylor (Taylor) appeals the order of the Court of Common Pleas of Bradford County (trial court) granting summary judgment to the Northeast Bradford School District (District) on a personal injury claim. The trial court held that Taylor's lawsuit did not fall within the real property exception to governmental immunity in what is commonly called the "Political Subdivision Tort Claims Act"[1] (Tort Claims Act) because her injury resulted from personalty, not realty. We reverse and remand.

The following facts are not in dispute. On December 20, 2008, Taylor attended a Christmas band concert in the gymnasium of the Northeast Bradford School. Before the concert began, a partition between two sections of the gym was partially opened to allow guests, including Taylor, to get to their seats. Once the concert began, the partition was closed to improve the acoustics in the gym. During the intermission, a door in the partition was opened to allow guests to walk to an area where raffle tickets were being sold. The door did not open to the floor; approximately one foot of the partition crossed the bottom of the doorway opening. This configuration required one to step over the partition to pass through the opening. Taylor, wishing to purchase a raffle ticket, followed a group of guests to the pocket door. Tay-

---

1. 42 Pa.C.S. §§ 8541–8564.

lor did not make the step and fell, which caused her to suffer two broken front teeth, various facial cuts and bruising.

In a December 5, 2012, deposition, Taylor provided more information about her injury. She testified that she had been to concerts in the District's gymnasium on at least two other occasions, although she could not remember if she had ever walked through the pocket door before. In response to questioning, Taylor explained that "I saw a lady go through this [pocket door], so I followed her." Reproduced Record (R.R. ____) at 101. When asked if she was "just following traffic," Taylor responded "[c]orrect." R.R. 109. Taylor acknowledged that she did not see anyone else trip over the partition wall at the bottom of the pocket door and she had no trouble seeing where she was walking. Taylor also testified that there was no sign warning guests of the step. Counsel for the District then questioned Taylor concerning the particulars of the fall. The following dialogue occurred:

Q: Do you know if your foot came into contact with any portion of the partition below the door?

A: No. I landed on my knees and my face.

Q: Okay. My question is, [d]o you know what specific part of the doorway frame ... your leg or foot came into contact with, causing you to trip?

A: I do not.

Q: Okay. Do you know which leg it was?

A: No, I do not.

R.R. 106.

Taylor filed a negligence claim against the District seeking damages for her injuries. The District moved for summary judgment, asserting governmental immunity and denying that the District was negli-

gent in its care, custody or control of the partition. In her brief opposing the District's motion, Taylor countered that the real property exception to immunity was applicable because the partition constituted a "fixture" as defined by this Court in *Blocker v. City of Philadelphia,* 729 A.2d 187 (Pa.Cmwlth.1999) (*Blocker I* ), *rev'd,* 563 Pa. 559, 763 A.2d 373 (2000). Taylor further argued that the question of whether the partition created a dangerous condition was one of fact for a jury to decide, not the court on a summary judgment motion.

At argument on the District's summary judgment motion, the District informed the trial court that *Blocker I,* on which Taylor relied, had been overruled by our Supreme Court in *Blocker v. City of Philadelphia,* 563 Pa. 559, 763 A.2d 373 (2000) (*Blocker II* ). It further argued that "under the Supreme Court ruling, the partition would remain a personalty, and therefore would not meet the exception to the [Tort Claims Act]." R.R. 169. In any case, even if the partition were a fixture, Taylor would be unable to show that the partition represented a dangerous condition of its real estate. Taylor responded that determining whether the partition was a fixture or personalty and whether it created a dangerous condition were questions of fact for a jury to decide.

On November 12, 2013, the trial court granted the District's motion for summary judgment. The trial court explained that our "Supreme Court's interpretation [of the real property exception] is starkly different from the argument that [Taylor] sets forth in her brief." Trial Court opinion at 5. Quoting *Blocker II,* the trial court explained as follows:

Chattels used in connection with real estate are of three classes: First, those which are manifestly furniture, as distinguished from improvements, and not pe-

culiarly fitted to the property with which they are used; these always remain personalty. Second, those which are so annexed to the property that they cannot be removed without material injury to the real estate or to themselves; these are realty, even in the face of an expressed intention that they should be considered personalty. . . . Third, those which, although *physically connected with the real estate, are so affixed* as to be removable without destroying or materially injuring the chattels themselves, or the property to which they are annexed; *these become part of the realty or remain personalty, depending upon the intention of the parties at the time of the annexation;* in this class fall such chattels as boilers and machinery affixed for the use of an owner or tenant but readily removable.

*Id.* at 5 (quoting *Blocker II,* 763 A.2d at 375) (second emphasis added). The trial court then concluded that

[t]he gymnasium partition clearly falls into the third category. Therefore, since the [Pennsylvania] Supreme Court decision in *Blocker* [*II* ] effectively defines what attached personalty becomes part of the realty . . . [the District] is correct in stating that [Taylor] has failed to establish a viable claim for negligence under the 'Real Property' exception of § 8542(b)(3).

*Id.* at 5–6.

On appeal,[2] Taylor argues, first, that the trial court erred in "finding that the partition through which [Taylor] fell was 'personalty' " because that was a factual question for a jury, and, further, the trial court got it wrong. Appellant's Brief at 4–5.

Second, Taylor argues that the trial court usurped the role of the jury by finding that the partition did not create a dangerous condition in the gymnasium. The District maintains that summary judgment was appropriate because Taylor failed to state a viable claim for negligence that fits within the real property exception to governmental immunity.

### Political Subdivision Tort Claims Act

Pennsylvania's local governments are granted immunity by Section 8541 of the Tort Claims Act, which states:

Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person.

42 Pa.C.S. § 8541. School districts are considered "local agencies" for purposes of the Tort Claims Act. *Repko v. Chichester School District,* 904 A.2d 1036, 1040 (Pa. Cmwlth.2006). However, this grant of immunity is waived for certain categories of tort claims. Section 8542 states:

(a) Liability imposed.—A local agency shall be liable for damages on account of an injury to a person or property within the limits set forth in this subchapter if both of the following conditions are satisfied and the injury occurs as a result of one of the acts set forth in subsection (b):

(1) The damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having available a defense under section 8541 (relating to governmental immunity

**2.** Our scope of review of summary judgment is *de novo,* and our standard of review is plenary. *Cochrane v. Kopko,* 975 A.2d 1203, 1205 (Pa.Cmwlth.2009). A grant of summary judgment is appropriate where there are no genuinely disputed material facts, and it is clear that the moving party is entitled to judgment as a matter of law. *Farabaugh v. Pennsylvania Turnpike Commission,* 590 Pa. 46, 911 A.2d 1264, 1267 (2006).

generally) or section 8546 (relating to defense of official immunity); and

(2) the injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the ·categories listed in subsection (b). As used in this paragraph, "negligent acts" shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct.

(b) Acts which may impose liability.— The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:

...

(3) Real property.—The care, custody or control of real property in the possession of the local agency . . .

42 Pa.C.S. § 8542. When invoking the real property exception in Section 8542(b)(3), the injured party must show that (a) the injury resulted from a dangerous condition that (b) stemmed from the care, custody or control of real property, not personalty. *Mellon v. City of Pittsburgh Zoo*, 760 A.2d 921, 924 (Pa.Cmwlth. 2000).

### The Partition: Personalty or Realty

In her first issue, Taylor asserts that "whether or not a chattel used in connection with real estate is a fixture or personalty is a question for the jury." Appellant's Brief at 7. In any case, she contends that the partition and door, which were permanently fixed to the gymnasium, were realty.

■ Whether chattel is personalty or a fixture is a question of law for the court to decide. *LoFurno v. Garnet Valley School District*, 904 A.2d 980, 983 (Pa.Cmwlth. 2006). *Bioni v. Canon–McMillan School District*, 521 Pa. 299, 555 A.2d 901 (1989), is instructive on this point. In that case, a

student was injured in school while working with a wooden lathe. Over the objection of the school district, the trial court submitted to the jury the question of whether the school district intended the wooden lathe to be personalty or a fixture. The jury determined that the lathe was a fixture and, further, that the school district had been negligent. The school district moved for post-trial relief on the ground that the trial court had improperly submitted the question to the jury. The trial court denied the school district's motion. On appeal, this Court affirmed.

Our Supreme Court disagreed and remanded the matter back to this Court "for a determination on the present record of the legal question as to whether the lathe is personalty or realty." *Id.* at 901. On remand, we made the following correction:

We hold, as a matter of law, that the lathe at issue here is personalty, and therefore, [the student's] cause of action against the [school district] does not fall within the real property exception to immunity. Thus, the trial court committed an abuse of discretion in refusing to grant [post-trial relief] to the [school district].

*Canon–McMillan School District v. Bioni*, 127 Pa.Cmwlth. 317, 561 A.2d 853, 855 (1989).

In short, whether an item is personalty or realty is a legal question for the court. We turn, then, to the question of whether, viewing the evidence in a light most favorable to Taylor, the District was entitled to summary judgment that the partition was personalty.

Taylor relied on this Court's decision in *Blocker I*. In that case, a visitor to a facility owned by the City of Philadelphia sustained injuries when the bleachers on which she was sitting collapsed. The plaintiff sought damages from the City,

which claimed governmental immunity. The City asserted that the real property exception was not applicable because the bleachers were personalty and not a permanent fixture of the City's real estate. The trial court agreed and granted the City's motion for summary judgment. On appeal, this Court, citing *In re Sheetz*, 657 A.2d 1011 (Pa.Cmwlth.1995), explained:

> The considerations to be made in determining whether or not a chattel becomes a fixture include (1) the manner in which it is physically attached or installed, (2) the extent to which it is essential to the permanent use of the building or other improvement, and (3) the intention of the parties who attached or installed it.

*Blocker I*, 729 A.2d at 189 (emphasis omitted). Concluding that a genuine issue of material fact existed as to whether the City intended the bleachers to be permanently affixed to its realty, we reversed the grant of summary judgment.

On appeal, the Supreme Court reversed, quoting the three-part test established in *Clayton v. Lienhard*, 312 Pa. 433, 167 A. 321, 322 (1933), on which the trial court relied. The Court explained that "only where personalty has been attached to realty does the question of the parties' intent become relevant." *Blocker II*, 763 A.2d at 375. Because it was undisputed that the bleachers from which the appellant fell were not attached to the property, the bleachers were held to be personalty as a matter of law. Accordingly, the Supreme Court held that this Court erred in considering the City's intention in installing the bleachers.

The third category of chattels identified in *Clayton*, which can be classified as realty or personalty, are

> those which, although physically connected with the real estate, are so affixed as to be removable without destroying or materially injuring the

chattels themselves, or the property to which they are annexed; these become part of the realty or remain personalty, depending upon the intention of the parties at the time of the annexation.

*Clayton*, 167 A. at 322. To apply this test, there needs to be evidence relevant to the removability of the chattel and the property owner's intent. This need for relevant evidence was the basis for our ruling in *LoFurno v. Garnet Valley School District*, 904 A.2d 980 (Pa.Cmwlth.2006). In that case, a student was injured by a mechanical sanding device that was bolted to the floor. At the close of discovery, the trial court held that because the machine was bolted to the floor, the device was a fixture. On appeal, this Court reversed. We explained that

> [w]hile the evidence, albeit thin, supports the finding that the sander was bolted to the floor, *the record is devoid of evidence that, once bolted, the machine could not easily be unbolted in order to be moved, let alone that to do so would cause material injury to the classroom or the sander* .... We conclude that evidence of bolting alone is insufficient to support a conclusion that the [school] intended the sander to be permanently affixed to the real estate; this is especially so where it is beyond dispute that such equipment is understandably safer if secured to the floor. Thus, the record and the supported findings mandate the conclusion that the equipment was personalty, not a fixture, as a matter of law.

*Id.* at 985–86 (emphasis added).

■ Here, the partition is a wall that can be pulled out or collapsed, depending on the school's needs. The partition has been part of the gymnasium for 44 years. It was pulled out, accordion-style, when necessary to create more than one space in the gymnasium. It is not known how the partition was fixed to the gymnasium wall

or how it was stabilized once it was pulled out. It may, or may not, have been bolted to the floor at strategic points, as well as, presumably, to the walls. The record is devoid of evidence on how the partition was installed and whether it could be removed without damage to the real estate or to the partition. Likewise, the record is devoid of evidence on the District's intent at the time of its installation.

The ultimate determination of whether the partition is a fixture or personalty is a question of law. However, in light of· the material factual issues underlying that determination, the trial court erred in holding that the partition was personalty. It lacked a factual foundation on the facts material to this legal question.[3]

### Conclusion

For .the foregoing reasons, we reverse. the order of the trial court and remand the matter to the trial court for further proceedings consistent with this opinion.

### ORDER

AND NOW, this 9th day of October, 2014, the order of the Court of Common Pleas of Bradford County dated November 12, 2013, in the above-captioned matter is hereby REVERSED and this matter is REMANDED for further proceedings in accordance with the attached opinion.

Jurisdiction relinquished.

---

3. Taylor asserts that the trial court held that the partition did not present a dangerous condition and that this determination can be made only by the jury. Generally, it is true that "whether a dangerous condition exists is not a question of law for the court but rather a question of fact for the jury to resolve." *Mellon v. City of Pittsburgh Zoo*, 760 A.2d 921, 925 (Pa.Cmwlth.2000). However, the trial court did not reach this determination because it concluded that Taylor was injured by personalty, not realty. Taylor presented evidence that there were no signs warning guests of the presence of the high pocket door. Reasonable minds could differ on whether the high step needed to pass through the pocket door represented a dangerous condition requiring a warning, which is a question for the jury. However, first it must be determined whether the "dangerous condition" was in personalty or realty. If the latter, the District enjoys immunity.