IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Syeta Brewington, as parent and : 
natural guardian for Jarrett : No. 886 C.D. 2015
Brewington, a minor and Syeta : Argued: October 19, 2016
Brewington in her own right, :
 :
 Appellants :
 :
 v. :
 :
City of Philadelphia and Walter G. :
Smith Elementary School :
 :
Appeal of: Syeta Brewington and :
Jarrett Brewington :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE RENÉE COHN JUBELIRER, Judge
          HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE JULIA K. HEARTHWAY, Judge
          HONORABLE JOSEPH M. COSGROVE, Judge


OPINION BY JUDGE WOJCIK                    FILED:  November 14, 2016


        Syeta Brewington, as parent and natural guardian for Jarrett
Brewington, a minor, and Syeta Brewington in her own right (Plaintiff) appeals
from the April 27, 2015 order of the Court of Common Pleas of Philadelphia
County (trial court) granting summary judgment to Walter G. Smith Elementary
School and the School District of Philadelphia (collectively, Defendants).

        The relevant facts follow.  On May 9, 2012, nine-year-old Jarrett
Brewington (Student) was injured during gym class at the Walter G. Smith

Elementary School (School). At the time Student was injured, he and other children were engaged in a relay race whose boundaries were concrete walls at either end of the school's gym.[1] (Reproduced Record (R.R.) at 86a.) Student testified: "I was running too fast and I couldn't stop and I tripped and fell. . . . And hit my head on the wall. . . . I fell to the ground and blacked out . . . blood ran all the way down my face." (R.R. at 79a-80a; 86a-87a.)

Student suffered a concussion that caused him to miss classes for the final weeks of the spring 2012 semester. His symptoms initially required him to severely curtail his activities, including watching television and even talking, for about three months. Student returned to school in the fall, but his memory problems persisted and his grades dropped. During his February 17, 2015 deposition, Student stated that he still experienced occasional headaches and intermittent memory problems.

On November 19, 2013, Plaintiff filed a Complaint against the School, the School District of Philadelphia, and the City of Philadelphia,[2] alleging in part as follows:

> 10. [Student] was engaged in gym activities when he was caused to sustain injuries as a result of a defective and dangerous condition of the premises caused directly by the actions/inactions of defendants (i.e. gym without safety mats).

---

[1] The gym had concrete walls and a concrete floor. The School closed in 2012, about a month after Student's injury.

[2] The City of Philadelphia was dismissed from the action by stipulation and order dated February 4, 2015.

11. Defendants were negligent in maintaining the property that was within their care, custody and control[.]

* * *

23. [Defendants'] negligence and carelessness consisted of the following:

(a) defendants caused or permitted dangerous conditions to exist;

(b) defendants failed to make a reasonable inspection of the premises, which would have revealed the dangerous condition created by the defendants;

(c) defendants failed to give warning of the dangerous condition and failed to erect barricades or to take any other precautions to prevent injury to [Student];

(d) defendants failed to remove the dangerous condition;

(e) defendants failed to exercise reasonable prudence and due care to keep the gym in a safe condition for the minor plaintiff;

(f) defendants violated the ordinance of Philadelphia County pertaining to maintenance of the premises; and

(g) defendants failed to conform to their own specifications and standards as to design and maintenance of the school gymnasium.

(h) defendants' negligence was a direct cause of injury to [Student];

(i) defendants were negligent in the care, custody and control of the premises.

(j) defendants were negligent in failing to maintain the property in a safe condition;

(Complaint, ¶¶10-11, 23, R.R. at 21a-22a, 24a-25a.)

3

Defendants filed an Answer and New Matter denying the relevant allegations in the complaint and asserting, among other things, the defense of governmental immunity. Sections 8541-8542 of the Judicial Code, 42 Pa.C.S. §§8541-8542, commonly known as the Political Subdivision Tort Claims Act, (Tort Claims Act). On March 2, 2015, Defendants filed a motion for summary judgment alleging that they were immune from liability for Student's injuries because the real property exception to governmental immunity at 42 Pa.C.S. §8542(b)(3) does not apply.

The trial court granted Defendants' motion for summary judgment by order dated April 25, 2015. The trial court first focused on the allegation in Paragraph 10 of Plaintiff's Complaint, alleging that Student's injuries resulted from a "defective and dangerous condition of the premises caused directly by the actions/inactions of defendants (i.e. gym without safety mats)." Relying on *Rieger v. Altoona Area School District*, 768 A.2d 912 (Pa. Cmwlth. 2001), the trial court held that a claim that Defendants were negligent in failing to protect the walls with safety mats does not fall within the real property exception because safety mats are personalty, not realty. The trial court next determined that, although Plaintiff adequately pleaded a claim of negligent design or construction, that claim was "comingled" with Plaintiff's claim of negligent care, custody and control of real property and accordingly, the holding in *Rieger* was dispositive.

On appeal to this Court, Plaintiff argues that the trial court erred in granting summary judgment to Defendants because Plaintiff's claim falls within the real property exception to governmental immunity.[3]

---

[3] On appeal from a trial court's order granting or denying summary judgment our standard of review is *de novo* and our scope of review is plenary. *Pentlong Corporation v. GLS* **(Footnote continued on next page…)**

Local government agencies are generally immune from tort liability. 42 Pa.C.S. §8541. However, Section 8542 of the Tort Claims Act waives immunity for specific categories of tort claims. It states:

> (a) Liability imposed. -- A local agency shall be liable for damages on account of an injury to a person or property within the limits set forth in this subchapter if both of the following conditions are satisfied and the injury occurs as a result of one of the acts set forth in subsection (b):
>
> > (1) The damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having available a defense under section 8541 (relating to governmental immunity generally) or section 8546 (relating to defense of official immunity); and
> >
> > (2) the injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b). As used in this paragraph, "negligent acts" shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct.
>
> (b) Acts which may impose liability. -- The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency: . . .
>
> *        *        *

_____

**(continued…)**

*Capital, Inc.*, 72 A.3d 818, 823 n.6 (Pa. Cmwlth. 2013). Summary judgment is properly entered only when, "after examining the record in the light most favorable to the non-moving party, and resolving of all doubts as to the existence of a genuine issue of material fact against the moving party, the moving party is clearly entitled to judgment as a matter of law." *Pyeritz v. Commonwealth*, 32 A.3d 687, 692 (Pa. 2011).

> (3) Real property. -- The care, custody or
> control of real property in the possession of the
> local agency . . . .

42 Pa.C.S. §8542. In order to fall within the real property exception, "the injured party must show that (a) the injury resulted from a dangerous condition that (b) stemmed from the care, custody or control of real property, not personalty." *Taylor v. Northeast Bradford School District*, 101 A.3d 144, 148 (Pa. Cmwlth. 2014); *Mellon v. City of Pittsburgh Zoo*, 760 A.2d 921, 924 (Pa. Cmwlth. 2000).

Plaintiff asserts that the allegations in the Complaint, the testimony presented, and Plaintiff's expert report, (R.R. at 220a-23a), state a claim that the design and layout of the gym and the construction of its walls were not safe for its intended purpose. Plaintiff argues that the trial court erred in characterizing that claim as one alleging an injury caused by personalty rather than real property.

Plaintiff cites *Grieff v. Reisinger*, 693 A.2d 195, 197 (Pa. 1997), which held that the real property exception to governmental immunity applied to injuries caused by a fire chief's alleged negligent care of the fire association's real property. In *Grieff*, our Supreme Court rejected the argument that the exception applied only to a dangerous condition "of" real property. Noting that the exception expressly applies to an agency's negligence related to the care, custody, or control of real property in its possession, the Supreme Court reasoned that "Grieff's care of the . . . property caused the fire that injured Reisinger. While he was removing paint from the floor, therein caring for the real property, it ignited causing the resultant injuries to Reisinger. Under the real property exception's plain language, Grieff and the Fire Association are not immune from suit." *Id.* at 197.

Although the Supreme Court's decision in *Grieff* suggested an expansion of the circumstances to which the real property exception to

6

governmental immunity would apply, it was not inconsistent with existing case law.

For example, in *Gump v. Chartiers-Houston School District*, 558 A.2d 589 (Pa. Cmwlth. 1989), a member of a high school wrestling team was injured while sprinting in a running drill conducted in the high school's hallway. "As he reached the end of the hallway [the student] failed to negotiate a left hand turn and unintentionally pushed his hand through the window pane of a hallway door." *Id.* at 590. The student suffered multiple lacerations of his right hand and arm requiring medical treatment. The appellants (the student and his parents) argued that the school district was not immune from suit "because of the alleged regular and permitted use of the hallway for wrestling activities." *Id.* at 602. They also argued that the school district's "failure to install a type of window that was shatterproof or reinforced created a dangerous condition." *Id.* This Court concluded that the appellants' allegations "*placed them squarely within the [real property] exception.*" *Id.* (emphasis added). Accordingly, we reversed the trial's court's grant of summary judgment and remanded for further proceedings.

In *Singer v. School District of Philadelphia*, 513 A.2d 1108 (Pa. Cmwlth. 1986), a student gymnast who was performing a stunt over a vaulting horse in his school's gymnasium fell and broke his elbow when he missed a mat and landed on the hardwood floor. The plaintiffs alleged that the school district was negligent in controlling the landing surface, specifically, by failing to provide sufficient mats on the hardwood gym floor for students' protection. The common pleas court granted judgment on the pleadings to the district, citing governmental immunity. The plaintiffs appealed, arguing that their allegations were within the real property exception. We initially recognized that the real property exception to

governmental immunity has been interpreted "*to impose liability for negligence which makes government–owned real property unsafe for activities for which it is regularly used, intended to be used or reasonably forseen to be used.*" *Id.* at 1109 (emphasis added). We reversed the trial court's order granting judgment on the pleadings for the school district, explaining:

> Our review of the complaint reveals that it alleges negligence concerning the care, custody and control of the landing surface around the vaulting horse. A necessary element of a gymnasium's hardwood floor, which is regularly used as a gymnastic stunt area is sufficient matting protection to ensure safe landing by the students. Since proper gym floor matting is an essential safety element of a gymnasium floor being utilized for a vaulting stunt, *it is an aspect within the District's care, custody and control of its real property, subject to the real property exception.*

*Id.* at 1109-10 (emphasis added).

We relied on *Singer* in *Cestari v. School District of Cheltenham Township*, 520 A.2d 110 (Pa. Cmwlth. 1987), to reverse the trial court's grant of summary judgment on the basis of governmental immunity. *Cestari* involved a student pole vaulter who was injured during a track meet when he failed to clear a pole and landed with one foot on and one foot off the landing mat. The student filed suit alleging that the district was negligent in, among other things, failing to conform to applicable guidelines related to the number and placement of mats in and about the pole vault pit. He asserted that his claim fell within the real property exception because the pole vault unit was affixed to the district's real property, thus becoming realty, and the district was negligent in failing to protect the pole vault pit with sufficient mats. Citing *Singer's* holding that the use of matting could constitute an aspect of an agency's care, custody, and control of real property, we

8

concluded that the allegations could fall within the real property exception and remanded the case for resolution of material facts.

Subsequently, in *Bradley v. Franklin County Prison*, 674 A.2d 363 (Pa. Cmwlth. 1996) (*en banc*), we held that allegations of a prison's negligence in installing a tile floor without a non-slip surface constituted a dangerous condition of government property set forth facts that fell within the real property exception. We reasoned that

> the prison authorities provided the shower facilities where running water was a necessary and inextricable part of the design; the prison constructed the shower and drying-off area knowing and intending that water would necessarily accumulate on the floor where bare feet must tread.  As such [sic], the instant case is analogous to *Singer* in that a shower drying off area must have tiles with non-slip properties *in order to be safe for its particular use,* i.e., being stepped upon by wet feet, *just as a school gymnasium floor must have sufficient matting protection in order to be safe for its intended, specific use, i.e., gymnastic activities of its students*.
>
> Accordingly, we hold that Bradley's allegation that his injury was caused by the defective design, construction *or condition of the floor, devoid of a non-slip surface*, is an allegation that falls within the real property exception to governmental immunity.  Because the question of whether Appellees have created a dangerous condition of government realty, *by failing to install a non-slip surface on the prison drying off area*, is one of fact for the jury to decide, the trial court acted improperly in granting the Appellees' motion for judgment on the pleadings.

*Bradley*, 674 A.2d at 366-67 (emphasis added).  In *Leonard v. Fox Chapel Area School District*, 674 A.2d 767, 770 (Pa. Cmwlth. 1996), we repeated that liability

9

may "be imposed for negligence which makes the governmental realty unsafe for its intended, specific and readily identifiable use."

In decisions that followed *Grieff*, we continued to apply that analysis, repeatedly holding that allegations of an agency's negligence in the care, custody, and control of real property that rendered its property unsafe for its intended and foreseeable use fell within the real property exception. In *Hanna v. West Shore School District*, 717 A.2d 626 (Pa. Cmwlth. 1998), we reversed the grant of summary judgment in a suit alleging that the plaintiff slipped in a puddle of water that accumulated as a result of an employee's negligence in damp-mopping a school floor. And in *Kevan v. Manesiotis*, 728 A.2d 1006 (Pa. Cmwlth. 1999), we held that a trial court erred in granting summary judgment to a school district based on governmental immunity where a student alleged that inadequate lighting in the school gymnasium contributed to injuries he sustained during indoor baseball practice. "As in *Floyd*[4] . . . in the present case a question of fact exists as to whether inadequate lighting in [the] gymnasium contributed to [the plaintiff's] injuries. The trial court thus erred in granting summary judgment to [the school district] on the grounds of governmental immunity." *Kevan*, 728 A.2d at 1008.

Additionally, in accord with the plain statutory language, we have consistently held that in order for the real property exception to apply, the real property must be in the "possession" and "control" of the governmental agency,[5] and the injury must be "caused by" negligence related to the care, custody, or

---

[4] *Floyd v. Philadelphia Housing Authority*, 623 A.2d 901 (Pa. Cmwlth. 1993).

[5] *See*, *e.g.*, *City of Pittsburgh v. Estate of Strahlman*, 677 A.2d 384 (Pa. Cmwlth. 1996).

10

control of the real property.[6]  Likewise, we have repeatedly held that the exception is limited to injuries involving real property and does not apply in cases where the plaintiff's injury was caused by personalty.  *See e.g., Repko v. Chichester School District,* 904 A.2d 1036 (Pa. Cmwlth. 2006) (injury was caused by a folding table that fell on a student);  *Kniaz v. Benton Borough*, 642 A.2d 551 (Pa. Cmwlth. 1994) (injury resulted when picnic table overturned); *Wilson v. Ridgeway Area School District*, 596 A.2d 1166 (Pa. Cmwlth. 1991) (injury was related to use of a table saw); *DeRitis v. City of Philadelphia*, 582 A.2d 738 (Pa. Cmwlth. 1990) (injury was caused by unsafe condition of bleacher); *Canon-McMillan School District v. Bioni*, 561 A.2d 853 (Pa. Cmwlth. 1989) (injury was caused by malfunction of a wood lathe not attached to real property); *Maloney v. City of Philadelphia*, 535 A.2d 209 (Pa. Cmwlth. 1987) (injury was caused by unsafe condition of scaffolding).

Determinations as to whether an alleged injury involves real property or personalty are often predicated on whether an article is a fixture.  *See, e.g., Blocker v. City of Philadelphia*, 763 A.2d 373 (Pa. 2000); *Gore v. Bethlehem Area School District*, 537 A.2d 913 (Pa. Cmwlth. 1988).[7]  Whether chattel is personalty or a fixture is a question of law for the court to decide.  *Taylor*, 101 A.3d at 148; *Canon-McMillan School District,* 561 A.2d at 855.

---

[6] *See e.g., Wellons v. SEPTA,* 596 A.2d 1169 (Pa. Cmwlth. 1991).

[7] "A fixture is an article in the nature of personal property which has been so annexed to the realty that it is regarded as part and parcel of the land."  *Gore*, 537 A.2d at 915 (quoting Black's Law Dictionary 574 (5th Ed. 1979)).  "The considerations to be made in determining whether or not a chattel becomes a fixture include (1) the manner in which it is physically attached or installed, (2) the extent to which it is essential to the permanent use of the building or other improvement, and (3) the intention of the parties who attached or installed it."  *Id.*

11

The plaintiff in *Blocker* was attending a concert at a city-owned facility and was injured when a bleacher that she was sitting on collapsed. She filed a claim against the city alleging that it negligently maintained the bleacher. The common pleas court granted summary judgment to the city, reasoning that, because the bleacher was not affixed to the realty it was personalty and, as such, the claim did not fit within the real property exception to governmental immunity.

On appeal, however, this Court reversed. Although there was no evidence that the bleacher was attached to the ground, we concluded that there was a genuine issue of material fact as to whether the city *intended* the bleacher to remain permanently on the concert grounds, which must be submitted to a jury as fact-finder.

> Addressing only that discrete issue, our Supreme Court reversed.
>
> Commonwealth Court erred in holding that the bleacher could be a fixture of the real property. There was no attachment of the bleacher to the property on which it rested. The court's view that the intention of the city regarding whether the bleacher was permanent in its location supersedes the lack of attachment was without basis. . . . It is anciently established that consideration of the intention of an owner regarding whether a chattel has been permanently placed on real property is relevant only where the chattel has in fact been affixed to the realty. . . . Absent an attachment to realty, a chattel remains personalty.

763 A.2d at 375. Citing the relevant principles set forth in *Clayton v. Lienhard*, 167 A. 321, 322 (Pa. 1933),[8] the court summarized its holding as follows: "Thus, a

---

[8] Chattels used in connection with real estate are of three classes: First, those which are manifestly furniture, as distinguished from improvements, and not peculiarly fitted to the property with which they are used; these always remain personalty.... Second, those which are so annexed to the property that they cannot be removed

**(Footnote continued on next page…)**

12

chattel that is not affixed to realty remains personalty; only where personalty has been attached to realty does the parties' intent become relevant." *Blocker*, 763 A.2d at 375.

Subsequently, in *Rieger v. Altoona Area School District*, 768 A.2d 912 (Pa. Cmwlth. 2001), this Court concluded that the narrow holding in *Blocker,* that a chattel not attached to realty remains personalty, had implicitly overruled our holding in *Singer* that the use of mats for safety purposes constituted an "aspect of the District's care, custody and control of its real property." 513 A.2d at 1109-10.

*Rieger* involved a student who was injured during cheerleading practice when she fell onto an unprotected hardwood gym floor. The Riegers claimed that the school district was negligent in the care, custody, and control of its real property by failing to provide mats on the hardwood surface used for cheerleading practice. There was no allegation in *Rieger* that her injury was caused by a condition of personalty, and, therefore, the legal distinction between real property and personalty was neither raised nor relevant. The plaintiff was injured when she struck the hardwood floor, which is clearly not personalty.

---

**(continued…)**

> without material injury to the real estate or to themselves; these are realty, even in the face of an expressed intention that they should be considered personalty . . . . Third, those which, although physically connected with the real estate, are so affixed as to be removable without destroying or materially injuring the chattels themselves, or the property to which they are annexed; these become part of the realty or remain personalty, depending upon the intention of the parties at the time of the annexation . . . .

*Blocker*, 763 A.2d at 375 (quoting *Clayton*, 167 A. at 322).

13

Nevertheless, the court in *Rieger* concluded that the holding in *Blocker* was dispositive.

Singer focused on the element that caused the student's injury – the unprotected hardwood floor – and not on that which could have prevented the injury – a mat. *Rieger* misapprehended this focus, concentrating not on the *cause* of the plaintiff's injury but on the nature of chattel that could have been used to protect students from injury.

Consequently, this Court in *Rieger* misconstrued *Blocker* as overruling *Singer*.

The analysis in *Singer* was introduced with the following statements:

> The Singers contend that the facts averred in the complaint come within the real property exception to governmental immunity, Section 8542(b)(3) of the Judicial Code, because the District *was negligent in controlling the landing surface* by *insufficiently protecting the hardwood floors with mats.* We agree.

513 A.2d at 1109 (emphasis added) (footnote omitted). The court next observed that, "[p]ursuant to the real property exception, the conduct alleged in the complaint must be directly related to the condition of the property. This exception has been read to impose liability for negligence which makes government-owned real property unsafe for activities for which it is regularly used, intended to be used or reasonably foreseen to be used." *Id.* (citations and footnote omitted).

In *Singer* this Court also highlighted the averment that "the District negligently . . . *failed to properly choose, construct, manage, maintain and control a landing surface for plaintiff's vault mentioned hereinabove.*" *Id.* at 1109 n.4 (emphasis in original).

14

> Our review of the complaint reveals that *it alleges negligence concerning the care, custody and control of the landing surface around the vaulting horse.* A necessary element of a gymnasium's hardwood floor, which is regularly used as a gymnastic stunt area is sufficient matting protection to ensure safe landing by the students. Since proper gym floor matting is an essential safety element of a gymnasium floor being utilized for a vaulting stunt, it is an aspect within the District's care, custody and control of its real property, subject to the real property exception.

*Id.* at 1109-10 (emphasis added).

We conclude that the court in *Rieger* misconstrued the above language as holding that *personalty placed on real property* to render it safe for its intended use *is considered to be real property* for purposes of governmental immunity. Such interpretation does not logically follow the *Singer* court's introductory summary of the case or the averments it emphasized. More importantly, it interprets *Singer* as conflicting with the well-settled principle that a chattel not affixed to real property remains personalty. *Clayton*.

Additionally, insofar as this analysis of whether the real property exception applies turns *on the nature of a remedy not provided* rather than the cause of the injury - the condition of the real property as it existed vis-a-vis its intended use – it will lead to absurdly inconsistent results for identically dangerous conditions. For example, a claim alleging a dangerous condition due to inadequate lighting would rest on whether the established standard of care calls for providing a floor lamp, which is chattel, or recessed lighting, which is a fixture. A claim that an injury was caused by a crumbling retaining wall would be dismissed if the plaintiff alleged that nylon barrier netting should have been used as a temporary protective measure. As illustrated, plaintiffs would be penalized for pointing out how easily an injury could have been avoided.

15

Plaintiff argues that she has not alleged that Student's injury was caused by the condition of any property that can be classified as personalty. Plaintiff maintains that, instead, the allegations in the Complaint, the testimony presented, and Plaintiff's expert report, (R.R. at 220a-23a), all relate to allegations that the design and layout of the gym and the construction of its walls were not safe for its intended purpose. We agree; Plaintiff's claim is that *the property as it existed was unsafe for its intended and regular use as a gymnasium*; the unprotected cement wall posed a danger to students who used it regularly for gym class, *Bradley*; *Singer*; and that dangerous condition was the cause of Student's injury. The fact that the possible *options for remedying* the dangerous condition of the gymnasium may include personalty is irrelevant. On summary judgment, the only issue is whether Plaintiff's allegations that Student's injury was caused by an unprotected concrete wall in an elementary school gym fall within the real property exception to governmental immunity.

Based on the foregoing, we hold that where a complaint includes specific allegations that a plaintiff's injuries resulted from negligence in the defendant's care, custody, or control of real property, neither the Supreme Court's decision in *Blocker* nor this Court's decision in *Rieger* precludes a determination that the real property exception may apply. Consequently, we reaffirm our decision in *Singer* and overrule *Rieger* as a misinterpretation of *Singer* and a misapplication of *Blocker*.

As to this case, we further conclude that the trial court erred in characterizing Student's claims of a "defective and dangerous condition of the premises" and Defendants' failure "to conform to their own specifications and standards as to [the] design" of the school gymnasium as "comingled" claims

16

involving personalty, rather than as claims alleging injury caused by Defendants' negligence in their care, custody, and control of real property.

Finally, we stress that while the question of whether a plaintiff's allegations of negligence concern real property or personalty is a question of law for the court to decide, it is well settled that the question of whether a defendant's negligence caused the plaintiff's injury is a question of fact to be decided by a jury. *Taylor*, 101 A.3d at 150; *Mellon*, 760 A.2d at 925.

Accordingly, we reverse the trial court's order and remand this matter to the trial court for further proceedings.

 

 

_____

MICHAEL H. WOJCIK, Judge

17

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Syeta Brewington, as parent and :
natural guardian for Jarrett : No. 886 C.D. 2015
Brewington, a minor and Syeta :
Brewington in her own right, :
 :
     Appellants :
 :
    v. :
 :
City of Philadelphia and Walter G. :
Smith Elementary School :
 :
Appeal of: Syeta Brewington and :
Jarrett Brewington :

O R D E R

AND NOW, this 14<u>th</u> day of <u>November</u>, 2016, the order of the Court of Common Pleas of Philadelphia County, dated April 27, 2015, is reversed, and the matter is remanded for further proceedings.

Jurisdiction relinquished.

_____
MICHAEL H. WOJCIK, Judge